UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                :

STEPHANIE LODATI, ET AL.,                 :

                                                :    Civil Action No.
                           Plaintiffs,    :    21-cv-3875 (ENV) (AYS)
                                                :

                              v.            :    **ORAL ARGUMENT REQUESTED**
                                                :    **Service Date: February 18, 2022**

FRIENDS ACADEMY, ET AL.,            :

                                                :

                              Defendants.    :
-------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

New York, New York
February 18, 2022

VENABLE LLP
Michael J. Volpe, Esq.
Doreen S. Martin, Esq.
Emily M. Tortora, Esq.
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Tel.: (212) 307-5500
Fax: (212) 307-5598
mjvolpe@venable.com
dsmartin@venable.com
emtortora@venable.com

*Attorneys for Defendants Friends Academy, The
Board of Trustees of Friends Academy, Andrea
Kelly, Mark Schoeffel, Carolyn Skudder-Pocius,
Jozeph Herceg, Ron Baskind, and Pamela Martocci*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................**Error! Bookmark not defined.**

I.  PRELIMINARY STATEMENT ..................................................................... 1

II. FACTUAL BACKGROUND AND RELEVANT ALLEGATIONS ................................. 3

    A.    Parties................................................................................... 3

    B.    John Doe's Purported Disability ............................................... 4

    C.    Alleged "Bullying" of John Doe by Friends Students ............................ 5

    D.    Jane Doe's "W" Sitting in Class .............................................. 5

    E.    John Doe's Incendiary Conduct and Purported Dismissal .................... 6

    F.    Jane Doe's Purported Dismissal ............................................... 6

III. ARGUMENT ..................................................................................... 7

    A.    Standard for Dismissal........................................................... 7

    B.    The First and Second Causes of Action for Violation of Title III of the ADA and Section 504 of the Rehabilitation Act Must be Dismissed.................... 7

        i.    The Individual Defendants and Board Are Not Subject to the Title III or Section 504 Claims Because They are Duplicative of Those Against Friends ................................................................. 8

        ii.    Friends Does Not Receive Federal Financial Assistance ......................... 9

        iii.    Plaintiff Cannot Demonstrate that Defendants Denied John Doe a Reasonable Accommodation When He Was Asked to Withdraw Due to His Misconduct During the Zoom Incident ................................. 10

        iv.    Plaintiff's Purported Request that Friends' Teachers Not "Call Attention" to John Doe is Not a Reasonable Accommodation, and so Cannot Form the Basis of a Discrimination Claim ............................. 11

        v.    Plaintiff's Title III Claim Premised on the One-Time, Inadvertent Conduct by Defendant Herceg Must Also Fail, As Title III Does Not Afford a Remedy for Such Conduct ................................................. 12

    C.    The Third and Tenth Causes of Action for Breach of Contract Must be Dismissed.......................................................................... 13

i

# TABLE OF CONTENTS
## (cont'd)

Page

i.    The Third and Tenth Causes of Action Should Have Been Brought Pursuant to Article 78 and are now Time-Barred. ................................... 13

ii.    The Amended Complaint Fails to Plausibly Allege that Friends Breached any Contract ............................................................................. 15

D.    The Fourth Cause of Action for Breach of Express Warranty Must be Dismissed Because the Enrollment Contracts Are Service Contracts for Which Breach of Express Warranty Does Not Apply. ......................................... 18

E.    The Fifth Cause of Action for Negligence Towards John Doe Must be Dismissed. .......................................................................................... 20

i.    The Amended Complaint Does Not Plead Foreseeability of the Alleged Bullying and Intimidation or Causation of Damages ................. 20

ii.    The Purported Accommodations Sought Are Not Reasonable, and So Defendants Could Not Have Been Negligent in Failing to Provide Them .......................................................................................... 22

F.    The Seventh Cause of Action for Negligence Towards Jane Doe Must be Dismissed Because it is Pled as a Negligent Supervision Claim, and Plaintiff Fails to Allege Friends' Employees had a Propensity for the Purported Misconduct. .......................................................................... 24

G.    The Sixth and Eighth Causes of Action for NIED Must be Dismissed Because the Amended Complaint Fails to Plead Negligence .............................. 25

H.    The Ninth Cause of Action for Assault and Battery Must Be Dismissed, Because Plaintiff Fails to Plead any Facts to Suggest that Defendant Martocci's Conduct Was Foreseeable to Friends, that Defendant Martocci Acted with the Requisite Intent, or that Defendant Kelly Engaged in Any Related Conduct Whatsoever ....................................................................... 26

I.    The Eleventh Cause of Action for Unfair and Deceptive Trade Practices Must be Dismissed ..................................................................................... 28

i.    The Amended Complaint Fails to Sufficiently Plead Defendants' Misrepresentations and that Such Misrepresentations were Material ....... 28

ii.    Plaintiff Does Not Plead Defendants' Allegedly Misleading Statements Caused John Doe's or Jane Doe's Purported Injuries. ........... 30

J.    The Board is Not a Proper Party to this Action, and All Claims Posited Against It Must Be Dismissed ................................................................... 31

### TABLE OF CONTENTS
### (cont'd)

Page

K.      The Court Should Deny Plaintiff Leave to Amend Again, Due to Her Failure to Cure Prior Deficiencies Via the Present Amendment ......................... 32

IV.      CONCLUSION ................................................................................................ 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AA v. Hammondsport Cent. Sch. Dist.*,
    527 F. Supp. 3d 501 (W.D.N.Y. Mar. 22, 2021) ....................................................21

*Aegis Ins. Servs., Inc. v. 7 World Trade Co.*,
    737 F.3d 166 (2d Cir. 2013).....................................................................................23

*Abraham v. Am. Home Mortg. Servicing*,
    947 F. Supp. 2d 222 (E.D.N.Y. 2013) .....................................................................30

*Ackerman v. Coca-Cola Co.*,
    No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July
    21, 2010) ...................................................................................................................28

*Akinde v. N.Y.C. Health & Hosps. Corp.*,
    737 F. App'x 51 (2d Cir. 2018) ...............................................................................13

*Armstrong v. McAlpin*,
    699 F.2d 79 (2d Cir. 1983).......................................................................................33

*Arroyo v. PHH Mortg. Corp.*,
    No. 13-CV-2335 (JS)--(AKT), 2014 U.S. Dist. LEXIS 68534 (E.D.N.Y. May
    19, 2014) ...................................................................................................................30

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................7, 28

*B.C.F. Oil Ref. v. Consolidated Edison Co.*,
    982 F. Supp. 302 (S.D.N.Y. 1997) ..........................................................................18

*B.D.S. v. Southold Union Free Sch. Dist.*,
    No. CV-08-319 (SJF) (WDW), 2009 U.S. Dist. LEXIS 55981 (E.D.N.Y. June
    24, 2009) .................................................................................................................8, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................7, 28

*Benny v. City of Long Beach*,
    No. 20-CV-1908 (KAM), 2021 U.S. Dist. LEXIS 182305 (E.D.N.Y. Sept. 23,
    2021) ...........................................................................................................................3

*Best Payphones, Inc. v. Dep't of Info. Tech & Telecomms.*,
    5 N.Y.3d 30 (2005)...................................................................................................15

*Boyd v. Broome Cmty. Coll.*,
No. 3: 14-CV-0397, 2015 U.S. Dist. LEXIS 152006 (N.D.N.Y. Nov. 10, 2015) ................................................................................................................8

*Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*,
955 F.3d 305 (2d Cir. 2020) ..............................................................................12

*C.T. v. Valley Stream Union Free Sch. Dist.*,
201 F. Supp. 3d 307 (E.D.N.Y. 2016) ...............................................................26

*Carabello v. N.Y. City Dep't of Educ.*,
928 F. Supp. 2d 627 (E.D.N.Y. 2013) ...............................................................21

*Cardona v. Cmty. Access, Inc.*,
No. 11-CV-4129 (MKB), 2013 U.S. Dist. LEXIS 10778 (E.D.N.Y. Jan. 25, 2013) ................................................................................................................9

*Corley v. Vance*,
365 F. Supp. 3d 407 (S.D.N.Y. 2019)................................................................25

*Cort v. Marshall's Dep't Store*,
No. 14-CV-7385 (NGG) (RER), 2015 U.S. Dist. LEXIS 172611 (E.D.N.Y. Dec. 29, 2015)................................................................................................25, 26

*Cruz v. New York*,
24 F. Supp. 3d 299 (W.D.N.Y. 2014) ................................................................25

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)................................................................................32

*Daniel v. Mondelez Int'l, Inc.*,
287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...............................................................28

*Disability Rights N.Y. v. N.Y. St.*,
No. 17-CV-6965-RRM-SJB, 2019 U.S. Dist. LEXIS 102609 (E.D.N.Y. Jun. 14, 2019) ................................................................................................................8

*Doe v. Montefiore Med. Ctr.*,
598 F. App'x 42 (2d Cir. 2015) .........................................................................24

*Doe v. Okla. City Univ.*,
406 F. App'x 248 (10th Cir. 2010) ....................................................................23

*Dubrow v. Briansky Saratoga Ballet Center, Inc.*,
327 N.Y.S.2d 501 (Sup. Ct. N.Y. Cnty. 1971) ..................................................19

*Durante Bros. Constr. Corp. v. Coll. Point Sports Ass'n, Inc.*,
207 A.D.2d 379 (2d Dep't 1994)......................................................................31

*E.M. v. N.Y. City Dep't of Educ.*,
  758 F.3d 442 (2d Cir. 2014)..................................................................................19

*Echeverria v. Krystie Manor, LP*,
  No. CV 07-1369 (WDW), 2009 U.S. Dist. LEXIS 27353 (E.D.N.Y. Mar. 30,
  2009) ........................................................................................................................9

*Emmons v. City Univ. of N.Y.*,
  715 F. Supp. 2d 394 (E.D.N.Y. 2010) .....................................................................8

*Ernst v. Gateway Plaza Mgmt. Corp.*,
  No. 11 Civ. 1169 (PAC) (RLE), 2012 U.S. Dist. LEXIS 58133 (S.D.N.Y.
  Mar. 12, 2012).........................................................................................................10

*Farina v. Metro. Trans. Auth.*,
  409 F. Supp. 3d 173 (S.D.N.Y. 2019).....................................................................29

*Fink v. Time Warner Cable*,
  810 F. Supp. 2d 633 (S.D.N.Y. 2011).....................................................................15

*Fink v. Time Warner Cable*,
  837 F. Supp. 2d 279 (S.D.N.Y. 2011).....................................................................28

*Flint v. Atl. Networks, LLC*,
  No. 18-CV-5534-ERK-SJB, 2020 U.S. Dist. LEXIS 35837 (E.D.N.Y. Feb. 28,
  2020) ......................................................................................................................13

*Foman v. Davis*,
  371 U.S. 178 (1962)................................................................................................32

*Gally v. Columbia Univ.*,
  22 F. Supp. 2d 199 (S.D.N.Y.1998).......................................................................13

*Gary v. New York Univ.*,
  850 N.Y.S.2d 433 (App. Div. 2008) .......................................................................18

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009).......................................................................................7

*Hayden v. Cnty. of Nassau*,
  180 F.3d 42 (2d Cir. 1999)......................................................................................32

*Horowitz v. Stryker Corp.*,
  613 F. Supp. 2d 271 (E.D.N.Y. 2009) ....................................................................29

*In re Hawker Beechcraft, Inc.*,
  486 B.R. 264 (S.D.N.Y. 2013).................................................................................16

*In re Lyman Good Dietary Supplements Litig.*,
  No. 17-CV-8047 (VEC), 2018 U.S. Dist. LEXIS 131668
  (S.D.N.Y. Aug. 6, 2018) ........................................................................27

*Judith M. v. Sisters of Charity Hosp.*,
  93 N.Y.2d 932 (1999) ............................................................................26

*K.A. v. City of N.Y.*,
  413 F. Supp. 3d 282 (S.D.N.Y. 2019) ......................................................9

*K.H. v. Vincent Smith Sch.*,
  No. CV 06-0319 (ERK) (JO), 2006 U.S. Dist. LEXIS 22412 (E.D.N.Y. Mar.
  29, 2006) ...............................................................................................10

*Keefe v. New York Law Sch.*,
  25 Misc. 3d 1228(A) (Sup. Ct. N.Y. Cnty. 2009) ..................................16

*Krasner v. City of N.Y.*,
  580 F. App'x 1 (2d Cir. 2014) ...............................................................11

*Lefkowitz v. Esposito*,
  416 N.Y.S.2d 686 (Sup. Ct. N.Y. County 1979) ....................................27

*Li v. Good Shepherd Lutheran Sch.*,
  No. 609827/2020, 2021 NYLJ LEXIS 441 (Sup. Ct. Nassau Cnty. May 6,
  2021) .....................................................................................................19

*Lipton v. New York University College of Dentistry*,
  865 F. Supp. 2d 403 (S.D.N.Y. 2012) ....................................................12

*Logan v. Matveevskii*,
  57 F. Supp. 3d 234 (S.D.N.Y. 2014) ........................................................9

*Mackenzie v. Donovan*,
  375 F. Supp. 2d 312 (S.D.N.Y. 2005) ......................................................8

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007) ..................................................................32

*McElwee v. Cty. of Orange*,
  700 F.3d 635 (2d Cir. 2012) ............................................................11, 23

*Miccio v. Conagra Foods, Inc.*,
  224 F. Supp. 3d 200 (W.D.N.Y. 2016) ...................................................19

*Mirand v. City of N.Y.*,
  84 N.Y.2d 44 (1994) ..............................................................................21

*Mitchell v. N.Y. Univ.*,
    No. 150622/2013, 2014 N.Y. Misc. LEXIS 105 (Sup. Ct. N.Y. County Jan. 8,
    2014) ....................................................................................................................27

*Morpurgo v. Inc. Village of Sag Harbor*,
    697 F. Supp. 2d 309 (E.D.N.Y. 2010) .................................................................31

*Nealy v. U.S. Surgical Corp.*,
    587 F. Supp. 2d 579 (S.D.N.Y. 2008)..................................................................30

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers &
    Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003)..................................................................................33

*Powell v. Nat'l Bd. of Med. Exam'rs*,
    364 F.3d 79 (2d Cir. 2004)..........................................................................7, 8, 13

*Prue v. Fiber Composites, LLC*,
    No. 11-CV-3304 (ERK) (LB), 2012 U.S. Dist. LEXIS 54027 (E.D.N.Y. Apr.
    17, 2012) ..............................................................................................................19

*Pulka v. Edelman*,
    40 N.Y.2d 781 (1976) ..........................................................................................23

*Purcell v. N.Y. Inst. of Tec.-Coll. of Osteopathic Med.*,
    No. CV 16-3555 (JMA) (AKT), 2017 U.S. Dist. LEXIS 124432 (E.D.N.Y.
    Aug. 4, 2017) .......................................................................................................13

*Reed v. 1-800-Flowers.com, Inc.*,
    327 F. Supp. 3d 539 (E.D.N.Y. 2018) .................................................................12

*Reed v. Pfizer, Inc.*,
    839 F. Supp. 2d 571 (E.D.N.Y. 2012) .................................................................19

*Reyes v. Fairfield Properties*,
    661 F. Supp. 2d 249 (E.D.N.Y. 2009) .................................................................10

*Ross v. Mitsui Fudosan, Inc.*,
    2 F. Supp. 2d 522 (S.D.N.Y. 1998) .....................................................................25

*Schimkewitsch v. New York Institute of Tech.*,
    No. CV 19-5199 (GRB)(AYS), 2020 U.S. Dist. LEXIS 98553 (E.D.N.Y. June
    4, 2020) ..........................................................................................................14, 15

*Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*,
    No. 11 Civ. 4362 (PKC), 2012 U.S. Dist. LEXIS 72902 (S.D.N.Y. May 23,
    2012) ....................................................................................................................28

*Schoengood v. Hofgur LLC*,
    No. 20-CV-2022 (KAM), 2021 U.S. Dist. LEXIS 90868 (E.D.N.Y. May 12,
    2021) ....................................................................................................................11

*Shostack v. Diller*,
    No. 15 Civ. 2255 (GBD) (JLC), 2016 U.S. Dist. LEXIS 30354 (S.D.N.Y.
    Mar. 8, 2016)........................................................................................................30

*Simpson v. Uniondale Union Free Sch. Dist.*,
    702 F. Supp. 2d 122 (E.D.N.Y. 2010) ..................................................................25

*Smith v. City of N.Y.*,
    No. 14-CV-4982, 2015 U.S. Dist. LEXIS 85224 (E.D.N.Y. June 26, 2015) .........25

*Stafford v. Int'l Harvester Co.*,
    668 F.2d 142 (2d Cir. 1981)..................................................................................18

*Sutter v. Dibello*,
    No. 18-CV-817 (SJF) (AKT), 2021 U.S. Dist. LEXIS 46312 (E.D.N.Y. Mar.
    10, 2021) ..............................................................................................................26

*Szuszkiewicz v. JPMorgan Chase Bank*,
    257 F. Supp. 3d 319 (E.D.N.Y. 2017) ..................................................................11

*Timmer v. City Univ. of N.Y.*,
    No. 20-CV-02554 (PKC) (RLM), 2021 U.S. Dist. LEXIS 152989 (E.D.N.Y.
    Aug. 13, 2021) ......................................................................................................10

*VanHouten v. Mount St. Mary Coll.*,
    28 N.Y.S.3d 433 (App. Div. 2016)........................................................................18

*Welch v. TD Ameritrade Holding Corp.*,
    No. 07 Civ. 6904 (RJS), 2009 U.S. Dist. LEXIS 65584 (S.D.N.Y. July 27,
    2009) ....................................................................................................................30

*Woods v.* Maytag Co., No. 10-CV-0559 (ADS)(WDW), 2010 U.S. Dist. LEXIS
    116595 (E.D.N.Y. Nov. 2, 2010)...........................................................................29

**Statutes**

29 U.S.C. § 794(a) ....................................................................................................7, 9

N.Y. C.P.L.R. 217(1)....................................................................................................15

N.Y. C.P.L.R. 3211(a)(1)..............................................................................................19

Defendants Friends Academy ("Friends" or the "School"), The Board of Trustees of Friends Academy (the "Board"), Andrea Kelly, Mark Schoeffel, Carolyn Skudder-Pocius, Jozeph Herceg, Ron Baskind, and Pamela Martocci (collectively, "Defendants"), through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss, in its entirety and with prejudice, the Amended Complaint filed by Stephanie Lodati ("Plaintiff") on behalf of herself and as parent and natural guardian of infants John Doe and Jane Doe, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("FRCP").

## I.    **PRELIMINARY STATEMENT**

The core of this litigation is Friends' September 2020 decision to have a tenth-grade student withdraw his enrollment, because he interrupted a Zoom class by changing his username to "George Floyd" and screaming "I can't breathe; I can't breathe."  The incident was captured on video and circulated widely, including on an Internet broadcast of "Inside Edition."  At a time of escalated racial tension throughout the country in the wake of George Floyd's murder, John Doe's actions significantly impacted the Friends community.  As a result, Friends gave John Doe the option of withdrawing or facing immediate dismissal from the School.  He withdrew.

Thereafter, Plaintiff attempted to pressure Friends into reenrolling John Doe by hiring legal counsel and threatening litigation.  Friends was not moved by these threats.  In response, Plaintiff filed a frivolous state court action in April 2021, which had little to do with John Doe's dismissal. Instead, it posited claims of negligence, negligent infliction of emotional distress ("NIED"), libel, and slander, premised on conduct occurring well before John Doe's withdrawal.  Among other baseless assertions, that complaint alleged that Friends had "attempted to induce terror and panic" in John Doe, "began a pattern and practice of not maintaining the confidentially [*sic*]" of John Doe's purported health issues, "intended to demean" John Doe, and "attempted to terrorize and frighten Plaintiffs." *See* Ex B to Declaration of Attorney Michael J. Volpe ("Volpe Decl.").  After

1

Plaintiff refused to withdraw the baseless pleading following communications from Defendants regarding same, Defendants moved to dismiss and for sanctions, due to the state court complaint's utter lack of factual and legal merit.  Given the contentious nature of Plaintiff's lawsuit and her obvious mistrust of the School—which made a positive and constructive relationship with the family impossible—Friends also advised Plaintiff that Jane Doe (John Doe's sister) could complete the 2020-2021 academic year, but Friends would not accept her contract for reenrollment the following year.  Friends' decision accorded with the terms of its enrollment contract and Handbook policies.  Plaintiff hired new counsel and, on the day after she was due to oppose Defendants' dismissal and sanctions motions, she withdrew her state court complaint. Notwithstanding that withdrawal, the state court has granted full briefing on Defendants' sanctions motion for the frivolous filing, which motion is still pending.

Knowing she has no valid grounds to sue Friends in connection with her children's withdrawals—because, under New York law, schools enjoy broad discretion in carrying out their disciplinary policies, with which courts should not interfere—Plaintiff subsequently concocted a federal complaint (the "Complaint"), basing subject-matter jurisdiction on the Americans with Disabilities Act ("ADA") and Rehabilitation Act of 1973 ("Rehabilitation Act"), despite never raising a disability-based claim in the prior state court action.  This was yet another meritless attempt to strong-arm Defendants into readmitting John Doe and Jane Doe.  In fact, after filing the Complaint, Plaintiff again offered to drop her claims if her children were readmitted to the School. Rejecting that offer, Defendants moved to dismiss the federal pleading due to its marked deficiencies, which Defendants highlighted in both their pre-motion letter to the Court and their moving brief.

In lieu of opposing Defendants' initial motion to dismiss, Plaintiff elected to amend the pleading, filing the operative Amended Complaint (cited herein as "Am. Compl.") on December

7, 2021.  This amended pleading largely duplicates the previous one and fails to even attempt to address the majority of deficiencies that Defendants' had previously identified in connection with their motion to dismiss.  It regurgitates the prior causes of action sounding in disability discrimination, breach of contract, breach of express warranty, negligence, NIED, and deceptive business practices, and adds a new claim for assault and battery.[1]  As in the state court action, these claims are manufactured purely for *in terrorem* effect, and must be dismissed as set forth below.

## II.    FACTUAL BACKGROUND AND RELEVANT ALLEGATIONS

The following facts are taken from the Amended Complaint[2] or documentary evidence[3] submitted in support of Defendants' motion pursuant to Rule 12(b)(6) of the FRCP.

### A.  Parties

Friends is a private K-12 school located in Locust Valley, Long Island, which has a culture of inclusivity and openness to learning differences.  Am. Compl. ¶¶ 5, 23, 102, 169.  It emphasizes this culture in its promotional materials and handbook, and on its website.  *Id.*, at ¶¶ 23, 102, 169.

Friends is a tax-exempt, not-for-profit charitable organization registered under Internal Revenue Service Code ("IRC") Section 501(c)(3) and New York's Not-for-Profit Corporation Law ("N-PCL").  Ex. F ("Kelly Aff.") to Volpe Decl.  It does not receive federal financial assistance in the form of any grants, loans, contracts, or any other arrangement by which the Federal government provides, or otherwise makes available, assistance in the form of funds or services of federal

---

[1] Likely recognizing the futility of pursuing her earlier claim for slander—due to Defendants' prior briefing about that claim's deficiencies—Plaintiff has now dropped such claim from the Amended Complaint.

[2] The factual allegations excerpted herein from Plaintiff's amended pleading are accepted as true for the purposes of this submission only.  Defendants do not intend the inclusion of such allegations in this document to constitute an admission of any kind.

[3] In connection with a motion to dismiss pursuant to Rule 12(b)(6) of the FRCP, the Court may consider "documents incorporated in the complaint by reference and documents which are integral to plaintiff's claim." *See Benny v. City of Long Beach*, No. 20-CV-1908 (KAM), 2021 U.S. Dist. LEXIS 182305, at *15-16 (E.D.N.Y. Sept. 23, 2021) (internal quotations and citation omitted).

personnel.  *See id.*  It also does not receive federal financial assistance in the form of real property or interest in such property.  *See id*.

The Board is the School's governing body.  Am. Compl. ¶ 6.  Defendant Kelly is Friends' Head of School.  *Id.*, at ¶ 7.  Defendants Schoeffel, Skudder-Pocius, Herceg, and Martocci are also Friends employees.  *See id.*, at ¶¶ 8-10, 12.  Defendant Baskind is a former Friends employee who was at the relevant times in charge of student discipline.  *See id.*, at ¶ 11.

In September 2020, John Doe was a student in the tenth grade, who had enrolled at Friends the prior academic year.  *Id.*, at ¶¶ 22, 37.  Jane Doe was a Friends student in the lower school's Early Childhood division.  *Id.*, at ¶¶ 4, 47, 158.  Plaintiff Lodati is the mother and natural guardian of John Doe and Jane Doe.  *Id.*, at ¶ 2.  Her children's fathers executed enrollment contracts for John Doe and Jane Doe.  *Id.*, at ¶¶ 94, 154; Exs. D and E to Volpe Decl.  Plaintiff also received a copy of Friends' Student and Parent Handbook (the "Handbook"), which sets forth Friends' disciplinary policies and explains that Friends has broad discretion in its implementation of such policies.  Am. Compl. ¶¶ 97-98, 157, 160-162; Ex. C to Volpe Decl.

### B.  John Doe's Purported Disability

Absent from the original state court complaint that Plaintiff elected to withdraw, but asserted here for purposes of federal jurisdiction, is a new cause of action premised on John Doe's purported disability.  According to the Amended Complaint, John Doe suffers from mental health conditions that purportedly cause him to experience "anxiety and feel self-conscious when he is 'signaled out' for unwanted attention," but also conversely lead him to "attempt to be a 'clown'" or "speak or act impulsively to appear humorous to his peers."  *See* Am. Compl. ¶¶ 3, 25, 26.  The Amended Complaint further alleges that Defendant Herceg and other unnamed teachers at Friends were "made aware" in unspecified fashion of John Doe's diagnoses during a parent-teacher conference, and "were asked specifically not to highlight or call attention to John Doe while in

class" so as not to "trigger" his purported mental health conditions.  *Id.*, at ¶ 27.  The pleading characterizes these requests as purported "accommodations."  *Id.*

Plaintiff asserts that Defendant Herceg violated these alleged accommodations on an unspecified date when, during a virtual course held via Zoom, he inadvertently made an email he was drafting to another individual—respecting John Doe's welfare, based on his appearance in class that day—visible to students.  Plaintiff alleges that "several students . . . message[d] John Doe" as a result, but does not specify what those purported messages contained.  *Id.*, at ¶¶ 28-29.

### C.  Alleged "Bullying" of John Doe by Friends Students

Plaintiff also now alleges that John Doe was regularly bullied by a group of Friends students, who purportedly made comments about his appearance, engaged in unspecified "physical attacks," and stole money from him.  *Id.*, at ¶¶ 30-31.  Tellingly, the Amended Complaint—like the original Complaint before it—fails to plead any facts whatsoever to demonstrate that this purported bullying was ever reported to, or directly witnessed by, Defendants.  *Id.*, at ¶¶ 30-33.

### D.  Jane Doe's "W" Sitting in Class

In or around November or December 2019, Defendant Martocci told Plaintiff she tied Jane Doe's legs together with a ribbon to prevent her from sitting in a "W" position, out of concern that the "W" position would cause her to have an uneven stride or lack balance, due to a lack of core strength.  *Id.*, at ¶¶ 48-51, 127-30.  Plaintiff brought Jane Doe to the pediatrician, who found no signs of core weakness and was concerned that Jane Doe's legs were tied together.  *Id.*, at ¶¶ 54-56, 133-134.  Plaintiff spoke with Kristin Minuto, Head of the Early Childhood Division at Friends, about the matter; Ms. Minuto apologized and assured Plaintiff that Jane Doe's legs would not be tied again.  *Id.*, at ¶ 57.  Ms. Minuto also met with Dot Woo, Principal of the Lower School at Friends, and Defendant Martocci to discuss the matter.  *Id.*, at ¶ 58.

### E.  John Doe's Incendiary Conduct and Purported Dismissal

In September 2020, many classes at Friends were held virtually due to the pandemic.   In or around that time, John Doe and many other students attended a particular Zoom class, during which John Doe changed his screen name to "George Floyd;" he then interrupted the class by shouting "I can't breathe."  *Id*., at ¶ 37 (the "Zoom Incident").  Plaintiff alleges that John Doe's health status immediately before the Zoom Incident was unstable and required him to alter his medications.  *Id*., at ¶¶ 34-36.  Following the Zoom Incident, Defendant Kelly emailed the School community condemning John Doe's behavior.  *Id*., at ¶ 40.  According to the Amended Complaint, he was then dismissed from Friends for the Zoom Incident without due process.  *Id*., at ¶ 45.

In light of the global reaction to George Floyd's murder, the Zoom Incident unsurprisingly had an immediate adverse impact on the Friends community.  According to the Amended Complaint, in reaction to the Zoom Incident and Defendant Kelly's email, students allegedly made death threats towards John Doe, and Plaintiff purportedly "had to fear" unidentified, non-defendant "protesters outside her house."[4]  *Id*., at ¶¶ 41-42.  This allegedly caused Plaintiff and John Doe to suffer extreme emotional anguish, among other symptoms.  *Id*., at ¶¶ 43, 44.

### F.  Jane Doe's Purported Dismissal

As noted above, following John Doe's withdrawal from Friends, Plaintiff filed a state court lawsuit on behalf of herself and John Doe.  That action alleged (A) negligence and NIED against Friends, its Board (as a unit), its Board members, and certain other individual defendants; and (B) libel and slander against certain individual defendants.  *Id*., at ¶ 59; Ex. B to Volpe Decl.  Due to the adversarial nature of Plaintiff's allegations and her blatant mistrust of the School, Friends allowed Jane Doe to complete the 2020-21 academic year but—in compliance with its enrollment

---

[4] The Amended Complaint is devoid of any allegations to suggest that anyone in fact protested outside Plaintiff's home in response to the Zoom Incident.

contract and Handbook—declined to reenroll her for the 2021-2022 year.  *See* Am. Compl. ¶ 59;

Exs. B, C, E to Volpe Decl.  Plaintiff claims that Jane Doe was dismissed without any justification

and in "retaliation" for the state court lawsuit.  Am. Compl. ¶¶ 59, 163-64.

## III.    ARGUMENT

 Defendants respectfully request that the Court dismiss Plaintiff's claims in their entirety,

with prejudice, for the reasons set forth below.

### A.  Standard for Dismissal

Pursuant to Rules 12(b)(1) and (6) of the FRCP, the Court must order dismissal where it

lacks subject matter jurisdiction or a plaintiff fails to state a claim upon which relief can be

granted.  To avoid dismissal, a complaint must present "sufficient factual matter" to state "a claim

to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court need not accept legal conclusions

as true in the face of a motion to dismiss.  *Iqbal*, 556 U.S. at 678.

### B.  The First and Second Causes of Action for Violation of Title III of the ADA and Section 504 of the Rehabilitation Act Must be Dismissed.

Plaintiff seeks to hold Friends and Defendant Herceg liable for violations of Title III of the

ADA, and to hold all defendants other than Defendant Martocci liable for violation of Section 504

of the Rehabilitation Act (collectively with the ADA, the "Acts").  *See* Am. Compl., ¶¶ 63-92.

Courts in this Circuit evaluate claims under the Acts collectively.  *See Powell v. Nat'l Bd. of Med.*

*Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004).  To state a claim under the Acts, a plaintiff must plausibly

allege "(1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to

[the Acts]; and (3) [he] was denied the opportunity to participate in or benefit from defendants'

services, programs, or activities, or was otherwise discriminated against by defendants, by reason

of [his] disability."  *Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009).  To state a claim under

Section 504, a plaintiff also must plausibly allege that the defendant receives federal financial assistance.  29 U.S.C.A. § 794(a) (2000); *Powell*, 364 F.3d at 85.

For the reasons below, Plaintiff's Title III and Section 504 claims must be dismissed, and accordingly, this Court lacks subject matter jurisdiction over Plaintiff's remaining state law claims. *See Mackenzie v. Donovan*, 375 F. Supp. 2d 312, 320 (S.D.N.Y. 2005) (dismissing plaintiff's state law claims without prejudice where all federal claims were dismissed).

> **i.   The Individual Defendants and the Board Are Not Subject to the Title III or Section 504 Claims Because They are Duplicative of Those Against Friends**.

Plaintiff's Title III and Section 504 claims against the individual defendants and the Board must fail, because the claims are duplicative of those posited against Friends.  Where a plaintiff raises causes of action under the Acts against an entity (such as a school) and the entity's agents in their official capacities, courts routinely dismiss the causes of action against the entity's agents. *See Disability Rights N.Y. v. N.Y. St.*, No. 17-CV-6965 (RRM) (SJB), 2019 U.S. Dist. LEXIS 102609, at *62-67 (E.D.N.Y. Jun. 14, 2019) (dismissing ADA and Rehabilitation Act claims against individual defendants because "it is redundant to assert an additional discrimination claim against [an] entity's agent in his or her official capacity, because the latter claim is the functional equivalent of a claim against the entity"); *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 408 (E.D.N.Y. 2010) (same); *B.D.S. v. Southold Union Free Sch. Dist.*, No. CV-08-319 (SJF) (WDW), 2009 U.S. Dist. LEXIS 55981, at *64-65 (E.D.N.Y. June 24, 2009) (same).  Similarly, courts dismiss ADA and Rehabilitation Act claims brought against an entity's board where the claims are redundant. *See Boyd v. Broome Cmty. Coll.*, No. 3:14-CV-0397 (GTS/DEP), 2015 U.S. Dist. LEXIS 152006, at *16 (N.D.N.Y. Nov. 10, 2015) (dismissing ADA and Rehabilitation Act claims against board of trustees of community college as duplicative of those against community college).

Here, Plaintiff's Title III and Section 504 claims are identical as between the individual defendants and Board and the "real party in interest"—Friends. *See B.D.S.*, 2009 U.S. Dist. LEXIS 55981, at *64-65. Plaintiff lumps Friends together with the individual defendants and Board, and largely fails to distinguish the alleged actions or inactions by Friends with any alleged actions or inactions by any other Defendant. *See, e.g.*, Am. Compl. ¶ 73 (claiming that "Friends further violated John Doe's accommodation" via the cited actions of Defendants Kelly and Herceg); ¶ 74 (noting "Defendants' inobservance of the law . . . ."); ¶¶ 75, 92 (noting "Defendants' unlawful discrimination . . . ."). Tellingly, the Section 504 allegations do not refer to the balance of the individual defendants or the Board independently. *See id.*, at ¶¶ 76-92. Accordingly, the first and second causes of action must be dismissed as against the individual defendants and Board.[5]

**ii.   Friends Does Not Receive Federal Financial Assistance**.

As was the case with Plaintiff's prior pleading, the Amended Complaint also does not plausibly allege that Friends receives federal financial assistance. "[T]he Rehabilitation Act only applies to federally-funded programs." *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 254 (S.D.N.Y. 2014) (citing *Cardona v. Cmty. Access, Inc.*, No. 11-CV-4129 (MKB), 2013 U.S. Dist. LEXIS 10778, at *20 n.5 (E.D.N.Y. Jan. 25, 2013)); 29 U.S.C.A § 794(a). The pleading asserts in a conclusory fashion that, "[u]pon information and belief, Friends is a private school receiving federal funds." Am. Compl. ¶ 66; *see also id.*, at ¶ 78. The "information and belief" is not specified and is manifestly mistaken. Plaintiff does not and cannot set forth any facts to support this frivolous allegation. *See Echeverria v. Krystie Manor, LP*, No. CV 07-1369 (WDW), 2009 U.S. Dist. LEXIS 27353, at *22-23 (E.D.N.Y. Mar. 30, 2009) (granting dismissal of Section 504 claim

---

[5] To the extent Plaintiff seeks monetary damages under the Rehabilitation Act against the balance of the individual defendants for actions taken in their official capacities, such claim must also be dismissed because Plaintiff fails to plead any facts to plausibly suggest the individual defendants intentionally violated the Act by acting with "deliberate indifference." *See K.A. v. City of N.Y.*, 413 F. Supp. 3d 282, 304 (S.D.N.Y. 2019) (dismissing Rehabilitation Act claim for monetary damages where the plaintiff failed to allege intentional discrimination based on a disability).

because defendants did not receive federal funding); *Timmer v. City Univ. of N.Y.*, No. 20-CV-02554 (PKC) (RLM), 2021 U.S. Dist. LEXIS 152989, at \*10, \*15 (E.D.N.Y. Aug. 13, 2021) (the Court is "not required to credit conclusory allegations or legal conclusions").

As Defendants previously noted for Plaintiff in connection with their prior motion, Friends is a tax-exempt, non-profit charitable organization that neither receives federal funding in the form of grants, loans, or contracts, nor does it receive federal assistance through funds, federal personnel, or real and personal property. *See* Kelly Aff., ¶¶ 2-3. Because the Amended Complaint does not allege any *facts* demonstrating otherwise, the Section 504 claim must be dismissed. *See Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 264 (E.D.N.Y. 2009) (granting dismissal because defendant did not receive federal financial assistance); *K.H. v. Vincent Smith Sch.*, No. CV 06-0319 (ERK) (JO), 2006 U.S. Dist. LEXIS 22412, at \*29-37 (E.D.N.Y. Mar. 29, 2006) (denying application for preliminary injunction against school because defendant did not receive federal financial assistance); *Ernst v. Gateway Plaza Mgmt. Corp.*, No. 11 Civ. 1169 (PAC) (RLE), 2012 U.S. Dist. LEXIS 58133, at \*7 (S.D.N.Y. Mar. 12, 2012) (dismissing Section 504 claim because defendants did not receive federal financial assistance).

### iii. Plaintiff Cannot Demonstrate that Defendants Denied John Doe a Reasonable Accommodation When He Was Asked to Withdraw Due to His Misconduct During the Zoom Incident.

*More than one year* after John Doe was allegedly dismissed, and *more than two months* after filing a state court complaint that conspicuously omitted such claim, Plaintiff now alleges that Defendants should have considered John Doe's purported disability when deciding whether to dismiss him for his conduct during the Zoom Incident, and claims that a failure to do so constitutes a failure to accommodate John Doe's disability. *See* Am. Compl. ¶¶ 86, 87, 91. Plaintiff also asserts that Defendant Kelly failed to accommodate him by sending an email to the Friends community respecting the conduct demonstrated in the Zoom Incident, as such email

"singled out"[6] John Doe in contravention of his purported accommodation request. *Id.*, at ¶¶ 40, 88-89. While Plaintiff suggests that Friends should have treated John Doe more gently for his misbehavior, "a requested accommodation that simply excuses past misconduct is unreasonable as a matter of law." *See McElwee v. Cty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012). The Acts do not mandate that the School overlook John Doe's inflammatory outburst, even if it is purportedly the result of a disability. *See id.*, at 644-46 ("Requiring others to tolerate misconduct . . . is not the kind of accommodation contemplated by the ADA."); *Krasner v. City of N.Y.*, 580 F. App'x 1, 3 (2d Cir. 2014) (when evaluating a discrimination claim premised on the plaintiff's dismissal for misconduct, "[t]he fact that [the] aberrant behavior may be a result of [his disability] is immaterial"); *Szuszkiewicz v. JPMorgan Chase Bank*, 257 F. Supp. 3d 319, 327-28 (E.D.N.Y. 2017) ("the ADA does not immunize [the disabled plaintiff] from discipline or discharge for incidents of misconduct" even where the "misconduct was a manifestation of his disability"). Plaintiff's suggestion that Friends should excuse John Doe's racist conduct would simply "authorize a preference for [John Doe] generally" rather than "put [him] on an even playing field," which is beyond what the Acts require. *McElwee*, 700 F.3d at 644-645; *Schoengood v. Hofgur LLC*, No. 20-CV-2022 (KAM), 2021 U.S. Dist. LEXIS 90868, at *17 (E.D.N.Y. May 12, 2021).

### iv. Plaintiff's Purported Request that Friends' Teachers Not "Call Attention" to John Doe is Not a Reasonable Accommodation, and so Cannot Form the Basis of a Discrimination Claim.

While Plaintiff alleges that Defendant Herceg failed to accommodate John Doe's purported disability—by inadvertently allowing an email he was drafting about John Doe's well-being to be visible to the students in a Zoom class, (Am. Compl. ¶ 71)—such claim must fail, as the underlying

---

[6] Naturally, Plaintiff fails to acknowledge that it was *John Doe's own inflammatory and public conduct* during a class attended by his peers that "singled [him] out," and that in turn prompted the outcry in the Friends community that needed to be addressed. In fact, Defendant Kelly's email did not mention by John Doe by name at all; instead, it simply identified the problematic behavior that an unnamed student had apparently exhibited during the Zoom incident.

accommodation requested was simply unreasonable.  It is axiomatic that, in order to advance a viable claim for failure to accommodate, the requested accommodation must be reasonable.  *See, e.g.*, *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539, 544 (E.D.N.Y. 2018) ("[A] public accommodation need not provide modifications [under Title III] . . . if those modifications are unreasonable or would fundamentally alter the nature of the good, service, or accommodation"); *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 313 (2d Cir. 2020); *Lipton v. New York University College of Dentistry*, 865 F. Supp. 2d 403, 409 (S.D.N.Y. 2012) (dismissing a disability discrimination claim in the educational context "because the accommodations that [the] plaintiff requests are unreasonable as a matter of law").

Here, Plaintiff alleges that certain teachers, including Herceg, specifically "were asked not to highlight or call attention to John Doe" at all, to avoid triggering his purported medical conditions.  Am. Compl. ¶ 69.  This amounts to a request to never call on, publicly speak to or address, or actively engage with John Doe in any way during his time as a student in the classroom setting.  Taken to its logical conclusion, no teacher could intervene if John Doe's behavior was disruptive to other students, or impart educational assistance to John Doe during class, or even dialog with John Doe on occasions in which he might actively seek to engage.  Such a request is plainly contrary to Friends' mission as an educational institution, and is patently unreasonable as a matter of law, warranting dismissal of Plaintiff's claim in this regard.

> **v.   Plaintiff's Title III Claim Premised on the One-Time, Inadvertent Conduct by Defendant Herceg Must Also Fail, As Title III Does Not Afford a Remedy for Such Conduct.**

Setting aside the unreasonableness of the underlying accommodation request, to the extent Plaintiff attempts to advance a disability-based discrimination claim based upon Defendant Herceg's conduct, (*see* Am. Compl. ¶ 71), such claim must necessarily be dismissed.  Under Title III of the ADA, a plaintiff may receive injunctive relief alone; in situations where redress via

injunctive relief "is no longer possible, the ADA claim becomes moot" and must be dismissed. *Flint v. Atl. Networks, LLC*, No. 18-CV-5534-ERK-SJB, 2020 U.S. Dist. LEXIS 35837, at *3 (E.D.N.Y. Feb. 28, 2020); *see also Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) (an "individual may only obtain injunctive relief for violations of a right under Title III; he cannot recover damages"). A claim is moot if "it impossible for the court to grant any effectual relief." *Akinde v. N.Y.C. Health & Hosps. Corp.*, 737 F. App'x 51, 52 (2d Cir. 2018).

Here, there is no injunctive relief that this Court could award in connection with Defendant Herceg's one-time conduct that would possibly provide redress. The inadvertent email disclosure during John Doe's enrollment at Friends—and the alleged "singling out" that resulted, in purported violation of John Doe's accommodation request—cannot be undone. There is no way for injunctive relief to "un-ring the bell," to remedy the purported attention that John Doe received as a result of this isolated incident. For this reason, Plaintiff's Title III claim premised on this conduct must be dismissed as moot.[7]

### C. The Third and Tenth Causes of Action for Breach of Contract Must be Dismissed.

#### i. The Third and Tenth Causes of Action Should Have Been Brought Pursuant to Article 78 and are Now Time-Barred.

Breach of contract claims which require New York courts to review a public or private school's academic or administrative determinations "must be brought, if at all, in an Article 78 proceeding." *Purcell v. N.Y. Inst. of Tec.-Coll. of Osteopathic Med.*, No. CV 16-3555 (JMA) (AKT), 2017 U.S. Dist. LEXIS 124432, at *29 (E.D.N.Y. Aug. 4, 2017); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 205 (S.D.N.Y.1998) ("Proceedings under Article 78 are typically the avenue

---

[7] Further, any Title III claim against Defendant Herceg individually or in his official capacity must also be dismissed, given the fact that he himself does not "operate" a public accommodation. *See, e.g.*, *Coddington v. Adelphi University*, 45 F. Supp. 2d 211, 217-18 (E.D.N.Y. 1999) (dismissing the Title III claim levied against an associate professor and other individual defendants in their individual and official capacities, even where they were "responsible for making decisions regarding . . . [the purportedly disabled] plaintiff in particular").

for parties challenging administrative actions by government agencies or by the decision-making bodies of private entities."). "Where [] the complaint seeks 'review of a variety of academic decisions at a private educational institution[] including: grading disputes, dismissals, expulsions, suspensions, and decisions regarding whether a student has fulfilled the requirements for graduation,' under state law such review 'has been limited to Article 78 proceedings.'" *Schimkewitsch v. New York Institute of Tech.*, No. CV 19-5199 (GRB) (AYS), 2020 U.S. Dist. LEXIS 98553, at *17 (E.D.N.Y. June 4, 2020) (citation omitted). Couching a grievance with a school's administrative decision as a breach of contract claim is insufficient. *See id.* at *16 ("While decisions of academic institutions are not immune from judicial scrutiny, review should be restricted to special proceedings under CPLR Article 78, as opposed to a contract or quasi-contractual claim.") (internal citations and quotation marks omitted). Further, "[t]he nature of the relief sought is key to determining whether Article 78 applies." *Id.*, at *17. A "complaint [that] seeks a range of declaratory and injunctive relief, confirm[s] that th[e] action falls within the ambit of the Article 78 bar." *Id.*, at *18.

Here, the crux of Plaintiff's breach of contract claims is that Friends violated its Handbook policies when "dismissing" John Doe and Jane Doe. *See*, *e.g.*, Am. Compl. ¶¶ 97-99 ("Friends violated their obligations under their own Handbook policies."); ¶ 157 ("A part of the contract was the existence of policies set forth by Friends. Included within those policies were terms concerning the duty of Friends to abide by the terms of their own handbook."); ¶¶ 160-162 (citing Friends' handbook provisions); ¶¶ 164-166 ("Completely contrary to their own handbook, Friends dismissed Jane Doe without even the mere pretext that Jane Doe misbehaved. . . . Friends violated their obligations under their own Handbook policies, thereby constituting breach of contract."). Fundamentally, Plaintiff is asking the Court to review Friends' Handbook policies and determine whether Friends violated them when deciding to dismiss John Doe and Jane Doe. Respectfully,

the Court cannot do so, as the academic decisions at issue here can be challenged only through an Article 78 proceeding.  Indeed, that the Amended Complaint seeks injunctive relief, among other various forms of relief, (*see* Am. Compl. at ¶ 74), confirms the "action falls within the ambit of the Article 78 bar."  *Schimkewitsch*, 2020 U.S. Dist. LEXIS 98553, at *18.

As Defendants made clear to Plaintiff in their first briefing seeking dismissal of the Complaint, Plaintiff is time-barred from raising the Third and Tenth causes of action in an Article 78 proceeding.  Such a proceeding must be brought "within four months after the determination to be reviewed becomes final and binding upon petitioner[.]"  *Best Payphones, Inc. v. Dep't of Info. Tech & Telecomms.*, 5 N.Y.3d 30, 32 (2005) (quoting N.Y. C.P.L.R. 217(1)).  Here, John Doe's withdrawal from Friends became effective on or around September 15, 2020, and the school declined the contract to re-enroll Jane Doe on or around June 8, 2021.  Accordingly, the time to commence an Article 78 proceeding concerning John Doe expired on January 15, 2020 and the time to commence an Article 78 proceeding concerning Jane Doe expired on October 8, 2021.

### ii.  The Amended Complaint Fails to Plausibly Allege that Friends Breached any Contract.

The breach of contract claims must also be dismissed because Plaintiff fails to plausibly allege a breach of contract, for the same reasons Defendants noted for Plaintiff in connection with their initial motion to dismiss.  The Amended Complaint refers to the enrollment contracts Friends entered with John Doe and Jane Doe, (Am. Compl. ¶¶ 94-96, 154-56), but relies upon selective excerpts of Friends' Handbook, (*see id.*, at ¶¶ 97-99, 157-165), and ignores other applicable Handbook sections that preclude Plaintiff's breach of contract claim.  "A breach of contract claim will be dismissed where a plaintiff fails to allege the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated."  *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644-45 (S.D.N.Y. 2011) (internal quotations and

citations omitted); *see also Keefe v. New York Law Sch.*, 25 Misc. 3d 1228(A), at *1 (Sup. Ct. N.Y. Cnty. 2009) ("[A] student must identify specific language in the school's . . . handbooks which establishes the particular 'contractual' right or obligation alleged by the student."). Here, the Amended Complaint only refers to excerpts of certain provisions in the School's Handbook, but the Court is permitted to consider the entire Handbook, including its "essential terms." *Cf. In re Hawker Beechcraft, Inc.*, 486 B.R. 264, 278 (S.D.N.Y. 2013) ("[A] debtor must assume or reject an entire contract, and cannot cherry-pick the provisions it does not like.").

In the Third cause of action, Plaintiff alleges that Friends breached provisions XVIII.I.1 and XVIII.I.2 of the Handbook when dismissing John Doe. *See* Am. Compl. ¶ 98. According to Plaintiff: "in the case of 'minor offenses', Friends was obligated to talk with [John Doe] to understand [his] intention and self-awareness," and, "[i]n the case of a 'major offense' . . . an immediate communication between student, parents, and school had to take place." Plaintiff then claims that "[n]either of these things happened in John Doe's case." *Id.*, at ¶¶ 98-99. In the Tenth cause of action, Plaintiff alleges that Friends breached provision XVII.H of the Handbook when dismissing Jane Doe. *See id.*, at ¶¶ 161-165. According to Plaintiff, Section XVII.H of the Handbook "list[s] examples of potential disciplinary responses" for misconduct, "[n]one of [which] involve the outright dismissal of a student from the school[, and which] involve focusing on the student's conduct that resulted in the disciplinary measure." She then asserts that "Jane Doe was dismissed from Friends without any explanation whatsoever" and "without even the mere pretext that Jane Doe misbehaved." *See id.*, at ¶¶ 161-164. In doing so, Plaintiff ignores the Handbook provisions that expressly give Friends flexibility in its disciplinary decision-making, and do not bind Friends to the provisions Plaintiff cites.

Specifically, as concerns John Doe, the School's Handbook provides that offensive language adversely affecting the community and hate speech of any kind will not be tolerated, and

16

Friends may exercise its right to impose disciplinary action—including suspension or expulsion—in such cases. *See* Ex. C to Volpe Decl., at 42 (Appx. C); *see also id.* at 1-3 (Sec. V, Fundamental Standards for Citizenship), 36-38 (Sec. J, Discipline System, Major Offenses). Plaintiff admits that, during Zoom class, John Doe "changed his name to 'George Floyd' and said, 'I can't breathe[.]'" *See* Am. Compl. ¶ 37. By any standard, John Doe's actions are properly classified as "language adversely affecting the community" and a "major offense" for which Friends had the discretion to request that John Doe withdraw.

As concerns Jane Doe, the School's Handbook provides in relevant part:

> Mutual respect and kindness; direct and honest communications; patience; trust; and civil and well-mannered resolution of disagreements must govern all interactions between parents and the faculty, staff, and administration. . . . In the extreme case, an impasse may make it difficult for the parent to remain a constructive member of the community. . . . Friends Academy reserves the right not to continue enrollment of a student if the school reasonably concludes that the actions of a parent (or guardian) undermine the school's expectations about conduct, make a positive and constructive friendship impossible, and seriously interfere with the school's ability to fulfill Friends Academy's educational purpose and mission.

Ex. C to Volpe Decl., at 11 (Sec. XV). Similarly, the School's enrollment contract provides:

> A positive, collaborative and constructive relationship between the School and Parents . . . is essential to the mission of the School. Thus, if the . . . communication . . . of Parents . . . reflects a loss of confidence in or serious disagreement with the School, including but not limited to disagreement with its decisions, strategies, policies, procedures, responsibilities . . . personnel, leadership or standards . . . . Parents understand and agree that the School has the right to dismiss the Student from the School . . . or implement other such restrictions as determined in the School's sole and exclusive discretion.

Ex. E to Volpe Decl., at 3. Here, Plaintiff admits she "sued Friends and their agents and employees because of their [alleged] behavior towards her son, John Doe." *See* Am. Compl. ¶ 163. Indeed, in that underlying state court complaint, Plaintiff alleged that the School "attempted to induce terror and panic" in John Doe, "began a pattern and practice of not maintaining the confidentially [*sic*]" of John's Doe's health issues, "intended to demean" John Doe, and "attempted to terrorize

and frighten Plaintiffs." *See* Ex. B to Volpe Decl., at 7-8.  The state court complaint further

asserted the School's actions were "negligent, careless and reckless" and the School and its Board,

administrators, and faculty caused Plaintiff to become "sick, sore, lamed, [and] disabled" and to

have "suffered shock and mental anguish." *Id.* at 10.  Allegations of this nature are precisely those

which "undermine the school's expectations about conduct, make a positive and constructive

friendship impossible, and seriously interfere with the school's ability to fulfill Friends Academy's

educational purpose and mission."   Thus, Friends properly exercised its express right to

discontinue Jane Doe's enrollment in accordance with its Handbook.

Plaintiff cannot base a breach of contract claim on certain Handbook provisions at the

exclusion of others that clearly afford Friends the discretion to dismiss students in certain cases,

such as those relevant here.  *See Gary v. New York Univ.*, 850 N.Y.S.2d 433, 434 (App. Div. 2008)

(dismissing breach of contract claim because plaintiff failed to demonstrate defendant did not

comply with its policies and procedures in terminating her enrollment).  Private schools enjoy

broad discretion in handling student discipline. *See VanHouten v. Mount St. Mary Coll.*, 28

N.Y.S.3d 433, 435 (App. Div. 2016) ("Private schools are afforded broad discretion in conducting

their programs, including decisions involving the discipline, suspension, and expulsion of their

students").  Because the Amended Complaint fails to demonstrate any breach of contract by

Friends, the Third and Tenth causes of action must be dismissed.

### D.  The Fourth Cause of Action for Breach of Express Warranty Must be Dismissed Because the Enrollment Contracts Are Service Contracts for Which Breach of Express Warranty Does Not Apply.

Plaintiff's claim for breach of express warranty fails because express warranty claims only

apply to goods, not services.  "[U]nder New York law 'all transactions where service predominates

are indeed immune from express and implied warranty analysis.'" *B.C.F. Oil Ref. v. Consolidated

Edison Co.*, 982 F. Supp. 302, 308 (S.D.N.Y. 1997) (quoting *Stafford v. Int'l Harvester Co.*, 668

F.2d 142, 146 (2d Cir. 1981)).  Here, the enrollment contracts at issue are contracts for educational

services.  *See E.M. v. N.Y. City Dep't of Educ.*, 758 F.3d 442, 458 Fn. 21 (2d Cir. 2014) (defendant

"fully performed its obligations under the enrollment contract by providing the promised

educational services"); *Li v. Good Shepherd Lutheran Sch.*, No. 609827/2020, 2021 NYLJ LEXIS

441, at *1 (Sup. Ct. Nassau Cnty. May 6, 2021) (dismissing "breach of [] service contract action"

against private school pursuant to N.Y. C.P.L.R. 3211(a)(1)); *Dubrow v. Briansky Saratoga Ballet

Center, Inc.*, 327 N.Y.S.2d 501, 504 (Sup. Ct. N.Y. Cnty. 1971) ("An agreement such as here to

provide for instruction and training in the technical art of ballet is clearly a personal service

contract.").  Plaintiff's cause of action for breach of express warranty must therefore be dismissed,

as Defendants previously noted for Plaintiff in connection with their initial motion to dismiss.

Moreover, the Amended Complaint still fails to sufficiently identify the express warranties

upon which Plaintiff relied and that Defendants breached, despite notice of these deficiencies from

Defendants' prior briefing.  To plead a breach of express warranty, a plaintiff must provide "proof

that an express warranty existed, was breached, and that plaintiff had relied on that warranty."

*Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012).  When a complaint fails to plead

the specific language of the warranty, the claim fails.  *See Prue v. Fiber Composites, LLC*, No. 11-

CV-3304 (ERK) (LB), 2012 U.S. Dist. LEXIS 54027, at *29-30 (E.D.N.Y. Apr. 17, 2012)

(dismissing claim because plaintiffs failed to set forth the "precise terms of the express warranty");

*Miccio v. Conagra Foods, Inc.*, 224 F. Supp. 3d 200, 207 (W.D.N.Y. 2016) (same).

Here, Plaintiff alleges "the faculty and administration of Friends emphasized their culture

of inclusivity and openness of learning differences" (Am. Compl. ¶ 102); "[Plaintiff's] decision to

enroll John Doe at Friends was greatly influenced by the statements and representations made by

Friends faculty and administration" (*id*., at ¶ 104); "the statements and representations made by

Friends faculty and administration to [Plaintiff] stressed Friends commitment to inclusivity of

learning differences" (*id.*, at ¶ 105); and "[t]he statements, and representations present on Friends promotional material and website that stressed Friends commitment to inclusivity of learning difference were express warranties made to [Plaintiff] by Friends" (*id.*, at ¶ 106). However, none of these allegations *specify* the "statements and representations" involving "culture of inclusivity and openness of learning differences" that Plaintiff allegedly relied upon. Therefore, Plaintiff's claim fails.

### E. The Fifth Cause of Action for Negligence Towards John Doe Must be Dismissed.

#### i. The Amended Complaint Does Not Plead Foreseeability of the Alleged Bullying and Intimidation or Causation of Damages.

The negligence claim respecting John Doe fails because the Amended Complaint does not adequately allege foreseeability. Plaintiff attempts to plead negligent supervision, but the allegations are far too conclusory to establish that Defendants either knew or should have known that the acts of bullying would occur. Again, Plaintiff has not been able to cure these deficiencies, despite the fact that Defendants have already highlighted them for her in the prior motion to dismiss. For example, the Amended Complaint states that Friends "fail[ed] to protect John Doe from being bullied" despite the fact that the bullying purportedly occurred "in a manner that Defendants should have been aware of." Am. Compl. ¶ 112; *see also id.*, at ¶ 33 ("Friends, by and through its employees . . . should have been aware of the bullying and harassment of John Doe because it was occurring daily. At no time did any Friends employee intervene to stop the bullying."). As examples, Plaintiff alleges that "John Doe was bullied and singled out by students from the beginning" and "[a] particular group of students took to bullying [him] every day." *Id.*, at ¶ 30. She also vaguely asserts that the unidentified students "would daily subject John Doe to humiliating and demeaning comments about his appearance and body," and "the bullying included physical attacks and having his money stolen." *Id.*, at ¶ 31.

New York courts have established clear rules for negligence claims involving student altercations. "[I]t is well settled that under New York law, 'schools are under a duty to adequately supervise the students in their charge and they will only be held liable for *foreseeable injuries* proximately related to the absence of adequate supervision.'" *AA v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 507 (W.D.N.Y. Mar. 22, 2021) (quoting *Carabello v. N.Y. City Dep't of Educ.*, 928 F. Supp. 2d 627, 646 (E.D.N.Y. 2013)) (emphasis added). School personnel cannot be expected to prevent all acts "that take place among students daily . . . absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act." *AA*, 527 F. Supp. 3d at 507 (quoting *Mirand v. City of N.Y.*, 84 N.Y.2d 44,49 (1994)). "In a case stemming from injuries caused by the acts of fellow students, a 'breach of duty is established only by showing that the defendant school had *specific, prior knowledge of the danger that caused the injury*, such that the third-party acts could reasonably have been anticipated.'" *AA*, 527 F. Supp. 3d at 507 (quoting *Carabello*, 928 F. Supp. 2d at 627) (emphasis added).

The allegations in this case fall far short of these foreseeability standards. Plaintiff does not allege *any facts* whatsoever to support the conclusory allegations that Friends "should have been aware" that a group of students purportedly made unidentified comments about John Doe's appearance, engaged in unspecified "physical attacks," or stole from him. Plaintiff fails to allege *which students* bullied or intimidated John Doe, *when* they allegedly did so, or *where* this conduct even occurred. Nor does she allege *how* Friends purportedly should have been aware of these acts; she proffers no facts whatsoever to suggest that a faculty member witnessed such alleged conduct, or that anyone reported it to the School. Likewise, the Amended Complaint does not plead that John Doe's alleged, unnamed assailants had any prior history of altercations about which Friends was aware. *See AA*, 527 F. Supp. 3d at 507 (dismissing negligent supervision claim where the "[p]laintiff has not alleged that the perpetrator was known to have had any prior history of similar

conduct toward [the plaintiff's child] or others, or that his assault upon [the plaintiff's child] was otherwise foreseeable to any of the defendants. . . . [the p]laintiff does not [] plausibly allege that [the defendant] had any actual knowledge of the assault as it was occurring, or that he had 'sufficiently specific knowledge or notice of the dangerous conduct' to establish constructive knowledge of the potential for such an assault."). Simply put, there are no facts to suggest that the purported bullying was foreseeable, vitiating a negligence claim against Defendants.

Moreover, because the Amended Complaint does not plead *any facts* to establish that Defendants personally observed or were otherwise made aware of the alleged acts of bullying, Plaintiff fails to establish causation of damages. *See id.*, at 508 (dismissing negligent supervision claims because "the complaint does *not* establish any factual connection between [the post-assault] conduct and any of the defendants by which causation of damages can be inferred. Specifically, [the] plaintiff makes no claim that any of the individual defendants, or any other school administrators, agents or employees, personally observed or were otherwise made aware of the post-assault campaign of harassment against [the plaintiff's child] . . . nor does the complaint describe the role that any of the defendants played or the authority they exercised" respecting those events). Accordingly, the negligence claim arising from the alleged bullying must be dismissed.

### ii. The Purported Accommodations Sought Are Not Reasonable, and So Defendants Could Not Have Been Negligent in Failing to Provide Them.

The negligence claim respecting John Doe also be dismissed, because Plaintiff's disability-based allegations simply do not support a negligence claim. At base, Plaintiff has alleged that Defendants had a duty to accommodate his purported disabilities, and negligently breached that duty by failing to consider those disabilities when condemning his misconduct in the Zoom Incident and then requesting his withdrawal. *See*, *e.g.*, Am. Compl. ¶¶ 72-74, 111-12. While Plaintiff attempts to import purported obligations under the ADA and the Rehabilitation Act to

undergird a common law claim for negligence, such attempt is unavailing. As discussed at length above in Section III.B.iii, *supra*, the Acts simply do not obligate Friends to excuse John Doe's racist outburst during the Zoom Incident, even if such misconduct was animated by his purported disability. *See, e.g.*, *McElwee*, 700 F.3d at 641, 645-46. As Friends had no obligation under the Acts to grant the accommodation purportedly sought in connection with the Zoom Incident, any negligence claim premised on that purported failure to accommodate must be dismissed. *See, e.g.*, *Doe v. Okla. City Univ.*, 406 F. App'x 248, 253 (10th Cir. 2010) (affirming the lower court's determination that because the plaintiff "failed to show discrimination in violation of the ADA[,] . . . her negligence claim [premised on the underlying ADA violation] must also fail"); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 177 (2d Cir. 2013) (noting that "a finding of negligence must be based on the breach of a duty"); *Pulka v. Edelman*, 40 N.Y.2d 781, 782 (1976) (asserting that "in the absence of duty, there is no breach[,] and without a breach there is no liability" for a claim of negligence).

For the same reason, Plaintiff's purported claim for negligence premised upon Defendant Herceg's inadvertent disclosure of an email respecting John Doe's welfare—which is founded in a purported duty to accommodate John Doe by refraining from "calling attention" to him in any way—must fail. Am. Compl. ¶¶ 28-29, 111, 112(b). As noted in Section III.B.iv., *supra*, a purported request that teachers employed by Friends never draw attention to John Doe in the classroom setting is inherently unreasonable; because Defendant Herceg had no duty to adhere an unreasonable accommodation request, any inadvertent failure to do so does not support a negligence claim. *See, e.g.*, *Pulka*, 40 N.Y.2d at 782.

23

**F. The Seventh Cause of Action for Negligence Towards Jane Doe Must be Dismissed Because it is Pled as a Negligent Supervision Claim, and Plaintiff Fails to Allege Friends' Employees had a Propensity for the Purported Misconduct**.

The negligence claim respecting Jane Doe must be dismissed because it is pled as a negligent supervision claim, yet the Amended Complaint fails to allege—because it cannot allege—that Friends' employees had a propensity for engaging in their supposedly tortious acts. "To state a claim for negligent supervision [] under New York law, in addition to the standard elements of negligence, a plaintiff must show . . . that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence. . . ." *Doe v. Montefiore Med. Ctr.*, 598 F. App'x 42, 43 (2d Cir. 2015) (citations omitted). The Amended Complaint alleges "Defendant Martocci breached the duty of care to Jane Doe by tying her legs together without the knowledge, skill, training, or experience to support such an action" (Am. Compl. ¶ 136); "Defendant Friends and Defendant Kelly owed a duty to Jane Doe to supervise Defendant Martocci" (*id.*, at ¶ 137); and "Friends and Kelly failed to properly supervise Martocci" (*id.*, at ¶ 138). But the Amended Complaint does not set forth a single fact to suggest Friends somehow knew or should have known that its employees had a propensity for permitting injuries to students, despite the fact that Defendants highlighted this failing in their prior motion. Plaintiff does not—because she cannot—allege Defendant Martocci had a propensity for tying students' legs together in class, or any Friends employee had prior disciplinary histories or were somehow predisposed to inadequately supervising students. In fact, the Amended Complaint alleges that when Plaintiff "brought th[e] matter to the attention of the Head of Early Childhood, Kristin Minuto[,] Mrs. Minuto expressed dismay and apologized" and "assured [Plaintiff] that these actions would never happen again." Am. Compl. ¶ 57. Further, "[t]he Principal of the Lower School, Dot Woo, Kristin Minuto and Pamela Martocci had a meeting to discuss the incident." *Id.*, at ¶ 58. Thus, Plaintiff admits that once Friends obtained notice of Defendant Martocci's

conduct, Friends took action (*i.e.*, was *not* negligent); all Plaintiff can muster are conclusory allegations that Friends and Defendant Kelly failed to properly supervise Defendant Martocci.  *See id.*, at ¶¶ 137-38.  Conclusory allegations are not facts.  *See Cort v. Marshall's Dep't Store*, No. 14-CV-7385 (NGG) (RER) , 2015 U.S. Dist. LEXIS 172611, at *13-14 (E.D.N.Y. Dec. 29, 2015) (dismissing negligent supervision claim because plaintiff's "conclusory allegation, without more, does not sufficiently allege that [defendant] was or should have been on notice of [assaulter]'s potential to commit an assault"); *Cruz v. New* York, 24 F. Supp. 3d 299, 311 (W.D.N.Y. 2014) ("Plaintiff alleges that the Supervisory Defendants knew or should have known that Defendants Waters and Clark were potentially dangerous.  Plaintiff's allegation is conclusory and unsupported by any factual allegations supporting his assertion") (internal citations and quotations omitted); *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 532-33 (S.D.N.Y. 1998) ("Conclusory allegations of negligent supervision are insufficient to overcome a motion to dismiss.").  Accordingly, the Seventh cause of action must be dismissed.

### G.  The Sixth and Eighth Causes of Action for NIED Must be Dismissed Because the Amended Complaint Fails to Plead Negligence.

Plaintiff's NIED causes of action depend entirely upon the legally deficient claims of negligence and therefore, they too must be dismissed.  To recover damages for NIED, the alleged emotional harm "must generally be premised upon a breach of a duty owed directly to the plaintiff[.]"  *Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 135 (E.D.N.Y. 2010).  "Claims for [NIED] fail when 'no allegations of negligence appear in the pleadings.'" *Smith v. City of N.Y.*, No. 14-CV-4982, 2015 U.S. Dist. LEXIS 85224, at *6, 7 (E.D.N.Y. June 26, 2015).  The Amended Complaint fails to establish negligence for the reasons described in Points E and F, *supra*, and Plaintiffs' NIED causes of action therefore must be dismissed.  *See Corley v. Vance,* 365 F. Supp. 3d 407, 454 (S.D.N.Y. 2019) (dismissing NIED

claim because the conduct that plaintiff described is "intentional and deliberate" and so "outside the ambit of actionable negligence").[8]

### H.  The Ninth Cause of Action for Assault and Battery Must Be Dismissed, Because Plaintiff Fails to Plead any Facts to Suggest that Defendant Martocci's Conduct Was Foreseeable to Friends, that Defendant Martocci Acted with the Requisite Intent, or that Defendant Kelly Engaged in Any Related Conduct Whatsoever.

As a threshold matter, Plaintiff's claim for assault and battery must fail as against Friends, because she fails to posit any facts to suggest that Defendant Martocci's purported conduct was foreseeable to the School.  *See*, *e.g.*, *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999) (in order for an employer to be liable for an employee's tortious act under a theory of respondeat superior, the tortious conduct at issue must be "generally foreseeable"); *Cort*, 2017 U.S. Dist. LEXIS 208424, at *14 (absent facts to suggest that the plaintiff's "assault was reasonably foreseeable, neither [the defendant entity] nor its employees had a duty to protect her from that assault").  As noted above in Section III.G., *supra*—and as highlighted for Plaintiff in Defendants' prior moving brief—the Amended Complaint lacks any allegations to suggest that Friends somehow knew or should have known that Defendant Martocci would purportedly tie Jane Doe's legs together in an attempt to alter her seated position, due to a concern that such position could cause her to have an uneven stride or negatively impact her balance.  *See* Am. Compl. ¶¶ 128-29.  This deficiency merits dismissal of the assault and battery claim posited against Friends.

The claim must also fail because the Amended Complaint lacks any facts to suggest that Defendant Martocci intended to cause injury to or engage in offensive conduct directed toward Jane Doe, or intended to cause Jane Doe to fear any offensive contact.  *See*, *e.g.*, *Sutter v. Dibello*, No. 18-CV-817 (SJF) (AKT), 2021 U.S. Dist. LEXIS 46312, at *93 (E.D.N.Y. Mar. 10, 2021)

---

[8] In the event the Fifth and Seventh causes of action survive dismissal, the NIED causes of action should be dismissed as duplicative.  *See C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 327-328 (E.D.N.Y. 2016) (dismissing NIED claims as duplicative of the plaintiff's viable negligence claims).

("[T]o state a claim for civil assault, the plaintiff must allege that the defendant intended either to inflict personal injury or to arouse apprehension of harmful or offensive bodily contact."); *Lefkowitz v. Esposito*, 416 N.Y.S.2d 686, 688 (Sup. Ct. N.Y. County 1979) (where assault and battery is alleged, "it is essential that the element of intent be [] pleaded . . . and the pleading will be dismissed if it is not properly alleged"); *Mitchell v. N.Y. Univ.*, No. 150622/2013, 2014 N.Y. Misc. LEXIS 105, at *16-17 (Sup. Ct. N.Y. County Jan. 8, 2014) (holding that "the claim for battery is insufficient for a failure to plead an intent . . . to harm plaintiff by bodily contact," and the assault claim must be dismissed because there was no allegation that the defendant school's employees "intended to place plaintiff in apprehension of harmful contact"); *In re Lyman Good Dietary Supplements Litig.*, No. 17-CV-8047 (VEC), 2018 U.S. Dist. LEXIS 131668, at *11 (S.D.N.Y. Aug. 6, 2018).   Rather, the Amended Complaint's allegations readily indicate that Defendant Martocci's purported conduct was animated by her *concern about Jane Doe's health and wellbeing*.  The pleading asserts that Defendant Martocci explicitly informed Plaintiff that she "was concerned" about the position in which Jane Doe was sitting, as the improper position "could cause Jane Doe to have an uneven stride and lack balance, among other things."  Am. Compl. ¶¶ 128-129.  The Amended Complaint also alleges that Defendant Martocci "frequently reminded" Jane Doe to "sit properly" due to those concerns, and then took a step to prevent her from sitting in a manner that Defendant Martocci believed could cause Jane Doe issues in the future.  *Id.*, at ¶ 128-30.  Accordingly, as the pleading lacks facts to suggest the requisite ill intent, the claim for assault and battery must be dismissed.

Plaintiff also appears to advance claims of assault and battery against Friends premised on Defendant Kelly's conduct in connection with this incident.  *See* Am. Compl. at p. 35 (purporting to advance a claim of assault and battery against Friends "by and through" Defendant Kelly in the heading for the Ninth Cause of Action).  However, the Amended Complaint is devoid of *any facts*

*whatsoever* to suggest that Defendant Kelly engaged in any action or inaction in this regard, further warranting dismissal. S*ee id.*, at ¶¶ 148-152 (citing conduct by Defendant Martocci alone in connection with the claim of assault and battery), 138 (blithely claiming in connection with another distinct cause of action that Defendant Kelly "failed to properly supervise" Defendant Martocci). *See also*, *e.g.*, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

## I.   The Eleventh Cause of Action for Unfair and Deceptive Trade Practices Must be Dismissed.

### i.   The Amended Complaint Fails to Sufficiently Plead Defendants' Misrepresentations and that Such Misrepresentations were Material.

The deceptive business practices claim fails because the Amended Complaint—like the prior pleading before it—does not specify the purported misrepresentations made by Defendants or sufficiently plead that such misrepresentations were material.  To state a claim for deceptive business practices under GBL § 349 or false advertising under GBL § 350, "a plaintiff must show: (1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading in a material respect; and (3) that the plaintiff was thereby injured." *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *86 (E.D.N.Y. July 21, 2010).  A defendant's act is misleading when "a reasonable consumer would have been misled by the defendant's conduct." *Id.*; *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189-90 (E.D.N.Y. 2018) (GBL §§ 349 and 350 require an additional finding that a reasonable consumer in like circumstances would consider the misrepresentation material). Dismissal is warranted where the plaintiff fails to "plead facts sufficient to make out a plausible claim for violation" of the statute. *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 284 (S.D.N.Y. 2011).  Generalized assertions of deception are not enough.  *Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11 Civ. 4362 (PKC), 2012 U.S. Dist. LEXIS 72902, at *19 (S.D.N.Y. May 23, 2012).

Here, to support the allegation that Defendants engaged in unfair and deceptive practices, the Amended Complaint alleges that: "Defendants engaged in a systematic scheme to deceive Plaintiff[] and all others interested in obtaining admission to Friends . . . [by] emphasiz[ing] their culture of inclusivity and openness to learning differences, and their *handbook* and *advertising material* [which] state the same" (Am. Compl. ¶ 169) (emphasis added); "both children were dismissed under circumstances that were in stark contrast to the statements made in the admission process" (*id.*, at ¶ 170); and "Defendants' conduct was deceptive, misleading, and undertaken in conscious disregard of, and with reckless indifference to, Plaintiff[]'[s] rights and interests" (*id.*, at ¶ 172). First, Friends' Handbook cannot serve as the basis for the GBL claims because it is not "consumer-oriented," as it is geared towards families whose students have already enrolled, and not to prospective students at large. *See Farina v. Metro. Trans. Auth.*, 409 F. Supp. 3d 173, 213-14 (S.D.N.Y. 2019) (dismissing GBL claims because "[p]laintiffs have not plausibly alleged that the collection of fines for tolling violations is a consumer[-]oriented transaction subject to the protections of the [GBL]"). Second—and despite prior notice from Defendants on this point—the Amended Complaint still leaves Defendants to speculate about the advertising materials upon which Plaintiff purportedly relied, as well as the particular representations within the Handbook and advertising materials upon which she purportedly relied, warranting outright dismissal. *See Woods v.* Maytag Co., No. 10-CV-0559 (ADS) (WDW), 2010 U.S. Dist. LEXIS 116595, at *42-45 (E.D.N.Y. Nov. 2, 2010) (dismissing GBL § 349 claim because merely asserting "[u]pon information and belief, the defendant knowingly misrepresented material facts regarding the safety and use of [a product] in an effort to induce plaintiffs and the public at large to purchase [it]" was insufficient); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 288 (E.D.N.Y. 2009) (dismissing GBL § 349 claim because plaintiff failed to "specif[y] what false representations defendants made"). Third, despite her amendment of the pleading, Plaintiff still fails to adequately allege how

the Handbook or advertising materials were inaccurate or misled her in any material way, that is, how John Doe's and Jane Doe's dismissals were purportedly "in stark contrast" to the alleged promises made. *See Shostack v. Diller*, No. 15 Civ. 2255 (GBD) (JLC), 2016 U.S. Dist. LEXIS 30354, at *12-13 (S.D.N.Y. Mar. 8, 2016) (dismissing GBL § 349 claim where the "[d]efendants' actions were not fraudulent" based on facts alleged); *Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904 (RJS), 2009 U.S. Dist. LEXIS 65584, at *31-32 (S.D.N.Y. July 27, 2009) (dismissing plaintiff's GBL § 349 claim "because the alleged misrepresentations and omissions identified in the Complaint . . . were not materially misleading"). Thus, the Eleventh cause of action for unfair and deceptive business practices must be dismissed.

### ii. Plaintiff Does Not Plead Defendants' Allegedly Misleading Statements Caused John Doe's or Jane Doe's Purported Injuries.

To state a claim under GBL §§ 349 and 350, "[t]he plaintiff… must show that the defendant's material deceptive act caused the injury." *Nealy v. U.S. Surgical Corp.,* 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008) (internal quotations omitted). As Defendants previously noted in their prior motion papers, Plaintiff still admits that John Doe was dismissed because of the Zoom Incident, and still alleges Jane Doe was dismissed "[i]n retaliation for John Doe seeking redress for his unwarranted dismissal and [] because [Plaintiff] complained about the bizarre conduct of a teacher." *See* Am. Compl. ¶¶ 37, 45, 171. The Amended Complaint does not plead Defendants' deceptive practices caused John Doe's or Jane Doe's alleged injuries and, therefore, the Eleventh cause of action must be dismissed. *See Arroyo v. PHH Mortg. Corp.*, No. 13-CV-2335 (JS) (AKT), 2014 U.S. Dist. LEXIS 68534, at*32-33 (E.D.N.Y. May 19, 2014) (dismissing the GBL § 349 claim for failure to plead causation); *Abraham v. Am. Home Mortg. Servicing*, 947 F. Supp. 2d 222, 234-35 (E.D.N.Y. 2013) (same).

**J.  The Board is Not a Proper Party to this Action, and All Claims Posited Against It Must Be Dismissed**.

The Board is not a proper party to this action because the allegations against it are entirely duplicative of the allegations against Friends.  There are no allegations of any specific actions or inactions of the Board or its members.  Plaintiff does not allege the Board took a particular vote or other action at a Board meeting.  Plaintiff also does not allege any specific negligent conduct by the Board or its members.  The only allegations expressly mentioning the Board are: the Board "was, and still is, the board entrusted with the power to make decisions on behalf of Defendant Friends Academy . . . ." (Am. Compl. ¶ 6); the Board "was aware of the incidents forming the basis of this complaint and approved and ratified the actions of the other Defendants" (*id.*, at ¶ 16); "[t]he Board of Trustees were always aware of the school's conduct and, by their actions or inactions, approved this conduct" (*id.*, at ¶ 46); "acts and omissions of [the individual defendants] . . . were approved and ratified by the Board of Trustees" (*id.*, at ¶ 62); and "Staff, Board Members, and faculty emphasize their culture of inclusivity and openness to learning differences" (*id.*, at ¶ 169).  These bald and conclusory allegations cannot survive a Rule 12(b)(6) motion.  *Morpurgo v. Inc. Village of Sag Harbor*, 697 F. Supp. 2d 309, 338 (E.D.N.Y. 2010) ("It is well settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in that regard to that Defendant should be granted").

The causes of action against the Board must further be dismissed because the Board members are immune from liability under New York's Not-for-Profit Corporation Law § 720-a.  It is undisputed that Friends' Board members are uncompensated for their roles and Friends is a not-for-profit charitable organization within the meaning of Section 501(c)(3) of the IRC.  *See* Kelly Aff., ¶¶ 4-5.  Plaintiff fatally does not allege otherwise. *See Durante Bros. Constr. Corp. v.*

*Coll. Point Sports Ass'n, Inc.*, 207 A.D.2d 379, 380 (2d Dep't 1994) (affirming dismissal of tort claim against uncompensated board member pursuant to N-PCL § 720-a).  Because the Amended Complaint fails to specify any actions or inactions of the Board or its members and Plaintiff cannot overcome the statutory bar against liability for uncompensated board members of a not-for-profit charitable organization, the Board should be dismissed as a party to the action.[9]

### K. The Court Should Deny Plaintiff Leave to Amend Again, Due to Her Failure to Cure Prior Deficiencies Via the Present Amendment.

In event that the Court grants the instant motion to dismiss, it should further deny Plaintiff leave to amend her pleading for a second time.  Leave to amend should be denied in situations where amendment would be futile, or where a plaintiff has "[r]epeated[ly] fail[ed] to cure deficiencies by amendments previously allowed." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  It is "within the sound discretion of the district court to grant or deny leave to amend." *Id*.

In cases where a cause of action is dismissed due to substantive failings, "better pleading will not cure it" and "[r]epleading would thus be futile." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  In the instant matter, Plaintiff's Rehabilitation Act claim, and her claims against the individual defendants under the Acts, are simply not viable as a matter of law for the reasons articulated in Sections III.B.i. and III.B.ii., *supra*.  As further amendment cannot correct this fundamental defect, leave to replead should be denied. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("opportunity to replead is rightfully denied" if the plaintiff cannot amend her pleading "in a manner which would survive dismissal").

In addition, Plaintiff has already attempted to amplify her pleading before this Court, informed by both Defendants' pre-motion letter and fulsome moving brief in connection with the

---

[9] The Board should further be dismissed as a party to the action for the reasons previously stated in Point III.B.i, *supra*.

first motion to dismiss.[10]  Despite this roadmap of deficiencies, Plaintiff's Amended Complaint largely duplicates the conclusory allegations and unavailing claims from in the prior pleading, warranting a denial of further leave to amend due to her failure to cure deficiencies by amendments previously allowed.  *See*, *e.g.*, *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003); *Armstrong v. McAlpin*, 699 F.2d 79, 93-94 (2d Cir. 1983) (affirming lower court's denial of leave to amend where plaintiff already had an opportunity to plead with greater specificity).

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety, with prejudice, and provide such other relief as the Court deems proper.

Dated:  New York, New York     VENABLE LLP
   February 18, 2022     Rockefeller Center
             1270 Avenue of the Americas, 24th Floor
             New York, New York 10020
             Tel.: (212) 307-5500
             Fax: (212) 307-5598
             By: *<u>/s/ Michael J. Volpe</u>*
             Michael J. Volpe, Esq.
             Doreen S. Martin, Esq.
             Emily M. Tortora, Esq.

---

[10] This Amended Complaint is in fact *the third version* of a pleading raising similar deficient claims; as noted above in Section II.F., *supra*, Plaintiff filed a similar pleading in state court, which she withdrew in the face of Defendants' motion to dismiss in that forum.  Plaintiff's failure to posit viable claims after three opportunities to do so merits denial of leave to amend.