## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

STEPHANIE LODATI, et al.,

               Plaintiffs,

        v.

THE BOARD OF TRUSTEES OF
FRIENDS ACADEMY, et al.,

               Defendants.

Civil Action No.
21-cv-3875 (ENV) (AYS)

**ORAL ARGUMENT
REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

The Law Office of Keith Altman
Keith Altman (Pro Hac Vice)
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
(248) 987-8929
keithaltman@kaltmanlaw.com
*Attorney for Plaintiffs*

# TABLE OF CONTENTS

**FACTUAL BACKGROUND** ...................................................................1

    A.  Factual Allegations Regarding John Doe. .......................................1

    B.  Factual Allegations Regarding Jane Doe. .......................................3

**ARGUMENT** ....................................................................................4

    A.  Standard for Dismissal. ...............................................................4

    B.  Plaintiffs Have Adequately Pled a Violation of Title III of the ADA and Section 504 of the Rehabilitation Act. .............................................5

    C.  Plaintiffs' Breach of Contract Claims are not Barred by Article 78. 10

    D.  Plaintiffs Have Adequately Pled their Third and Tenth Causes of Action for Breach of Contract................................................................12

    E.  Plaintiffs Have Adequately Pled their Fifth Cause of Action for Negligence with Respect to John Doe. ................................................15

    F.  Plaintiffs Have Adequately Pled their Seventh Cause of Action for Negligence with Respect to Jane Doe. ................................................18

    G.  Plaintiffs Have Adequately Pled their Sixth and Eighth Causes of Action for Negligent Infliction of Emotional Distress. ........................19

    H.  Plaintiffs Have Adequately Pled their Ninth Cause of Action for Assault and Battery. ..........................................................................20

    I.  Plaintiffs Have Adequately Pled their Eleventh Cause of Action for Unfair and Deceptive Trade Practices.................................................21

    J.  Plaintiff Should be Granted Leave to Amend their Complaint Should This Court Grant Defendants' Motion to Dismiss...................24

**CONCLUSION**......................................................................26

## TABLE OF AUTHORITIES

## Cases

*Andersen v. N. Shore Long Island Jewish Healthcare System's Zucker Hillside Hosp.*, No. 12- CV-1049 (JFB)(ETB), 2013 U.S. Dist. LEXIS 29972 (E.D.N.Y. Jan. 23, 2013) ............................................................ 4

*Ashcroft v. Iqbal*, 556 US 662 (2009) ........................................................ 4

*Bell Atl. Corp. v. Twombly*. 550 U.S. 544 (2007) ................................... 3, 4

*Bowman v. State*, 10 A.D.3d 315 (1st Dep't. 2004) ................................. 14

*Brandy B. v. Eden Cent. Sch. Dist.*, 15 N.Y.3d 297 (2010) ..................... 13

*C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307 (E.D.N.Y. 2016) ....................................................................................... 15

*Caravalho v. City of N.Y.*, No. 13-cv-4174 (PKC)(MHD), 2016 U.S. Dist. LEXIS 44280 (S.D.N.Y. Mar. 31, 2016) .............................................. 15

*Commerce & Indus. Ins. Co. v. United States Bank Nat'l Ass'n*, 2008 U.S. Dist. LEXIS 67768 (S.D.N.Y. Aug. 29, 2008) ............................... 10

*Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384 (1995) .................. 10

*Doe v. Fulton Sch. Dist.*, 826 N.Y.S.2d 543 (4th Dep't 2006) ................ 13

*Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.,* 949 N.Y.S.2d 115 (App. Div. 2012) .......................................................................................................... 9

*Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052 (2d Cir. 1992) ..................................................................... 10

*Foman v. Davis*, 371 U.S. 178 (1962) ..................................................... 20

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ........................... 5

*Gally v. Columbia Univ.*, 22 F. Supp. 2d 199 (S.D.N.Y. 1998) ............. 8, 9

*Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006) ........................... 16

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.,* 37 N.Y.3d 169 (2021) .................................................... 17

*Hoose v. Drumm*, 281 N.Y. 54 (1939) ..................................................... 13

*Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271 (E.D.N.Y. 2009) ........... 18

*Jeffreys v. Griffin*, 1 N.Y.3d 34 (2003) ................................................... 16

*Kennedy v. Bethpage Union Free Sch. Dist.*, No. 20-CV-72 (PKC) (ARL), 2021 U.S. Dist. LEXIS 188884 (E.D.N.Y. Sep. 30, 2021) ................... 20

*Kopec v. Coughlin*, 922 F.2d 152 (2d Cir. 1991) ...................................... 5

*Krasner v. City of N.Y.*, 2013 U.S. Dist. LEXIS 136534 (S.D.N.Y. Sep. 23, 2013) ............................................................................................... 6

*Krasner v. City of N.Y.*, 580 F. App'x 1 (2d Cir. 2014) ............................. 6

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ....... 19

*McElwee v. Cty. of Orange*, 700 F.3d 635 (2d Cir. 2012) ......................... 7

*Mendoza v. Lainesita Rest. Corp.*, No. 12 CV 4188 (DRH)(ARL), 2014

    U.S. Dist. LEXIS 101769 (E.D.N.Y. July 25, 2014) ............................. 19

*Mirand v. City of N.Y.*, 84 N.Y.2d 44 (1994) ........................................... 13

*Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293 (1983) ............ 10

*New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308 (1995) ........ 10, 11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,

    *N.A.*, 85 N.Y.2d 20 (1995) ................................................................... 18

*Outback/Empire I, Ltd. Partnership v. Kamitis, Inc.*, 35 A.D.3d 563, (2d

    Dep't 2006) ........................................................................................... 10

*Pell v. Trustees of Columbia Univ.*, 1998 U.S. Dist. LEXIS 407, No. 97

    Civ. 0193, 1998 WL 19989 (S.D.N.Y. Jan. 21, 1998) ............................ 8

*Rivera v. State of N.Y.,* 34 N.Y.3d 383 (2019) ........................................ 16

*Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386 (W.D.N.Y.

    2017) ................................................................................................... 8, 9

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ........................................ 3

*Sea Carriers Corp. v. Empire Programs, Inc.*, 488 F. Supp. 2d 375

    (S.D.N.Y. 2007) ................................................................................... 10

*Szuszkiewicz v. JPMorgan Chase Bank*, 257 F. Supp. 3d 319 (E.D.N.Y.

    2017) ....................................................................................................... 7

*Talavera v. Arbit*, 18 A.D.3d 738 (2d Dep't. 2005)...................................14

*Thrane v. Metro. Transp. Auth.*, No. 15-cv-07418(FB)(LB), 2018 U.S.

Dist. LEXIS 22700, (E.D.N.Y. Feb. 12, 2018) ........................................5

*Tower Ins. Co. v. Old N. Blvd. Rest. Corp.*, 245 A.D.2d 241 (1st Dep't.

1997).....................................................................................................15

*Turturro v. City of N.Y.*, 28 N.Y.3d 469 (2016)........................................13

*Villanueva v. Comparetto*, 180 A.D.2d 627 (2d Dep't. 1992) ..................16

*Woods v. Maytag Co.*, No. 10-CV-0559 (ADS)(WDW), 2010 U.S. Dist.

LEXIS 116595 (E.D.N.Y. Nov. 2, 2010) ...............................................18

## Statutes

N.Y. C.P.L.R. § 7801...................................................................................7

N.Y. Gen. Bus. Law § 349 ...................................................................14, 15

## Rules

USCS Fed Rules Civ Proc R 15 (a)............................................................16

## FACTUAL BACKGROUND

### A. Factual Allegations Regarding John Doe.

John Doe began attending the Friends Academy Upper School as a ninth grader in September of 2019 (Am. Compl. ¶ 22).   At the time that he started attending Friends Academy, John Doe suffered from multiple disabilities including Generalized Anxiety Disorder (GAD), Obsessive-Compulsive Disorder (OCD), and Attention Deficit Hyperactivity Disorder (ADHD).  *Id.* at ¶ 3.   As a result of these disorders, John Doe suffers from an extremely high level of anxiety and experiences self-conscious when he feels he is being "singled out". *Id.* at ¶ 25.  John Doe's disabilities also cause him to speak or act impulsively in order to gain validation from his peers.  *Id.* at ¶ 26.  John Doe's parents believed that Friends Academy would be a good fit for him because Friends Academy had portrayed itself as a school that was especially accommodating to students with learning differences.  *Id.* at ¶ 24.

John Doe's teachers were made aware of his disabilities and agreed to implement accommodations in order to manage them.  *Id.* at ¶ 27-28.  Specifically, the teachers agreed to refrain from calling on or

highlighting John Doe in such manner so as to make him feel singled out. *Id.* However, John Doe's accommodation was quickly violated when, during a zoom class, teacher Jozeph Herceg allowed an extremely inflammatory email he was typing to be viewed by the entire class. *Id.* at ¶ 29. The email stated that John Doe had a "black eye" and had "missed class" due to "problems at home". *Id.* This email, clearly insinuating domestic abuse involving John Doe, was viewed by the entire class and caused several students to message John Doe. *Id.* This incident caused John Doe extreme emotional harm. *Id.*

Furthermore, John Doe was subjected to daily bullying almost immediately upon his enrollment at Friends Academy. *Id.* at ¶ 30. This bullying occurred on a daily basis and caused John Doe to experience severe emotional distress. *Id.* at ¶ 32. Despite this bullying taking place regularly on school campus, no Friends Academy staff member ever intervened and it went on unchecked throughout the entirety of John Doe's enrollment. *Id.* at ¶ 33.

In September of 2020, John Doe joined a Friends Academy Zoom class and changed his screen name to "George Floyd" while stating "I can't breathe". *Id.* at ¶ 37. This action, while deeply regrettable, was a

manifestation of impulsive behavior brought on by his disabilities. *Id.* at ¶ 72. John Doe took responsibility for his actions and admitted them to Friends Academy Upper School principal Mark Schoeffel. *Id.* at ¶ 39.

Soon after this incident, Andrea Kelly, the Friends Academy Head of School sent out an inflammatory email to the Friends community which publicly shamed John Doe. *Id.* at ¶ 40. This soon spiraled into a campaign of harassment against John Doe with several classmates sending him death threats. *Id.* at ¶ 41. John Doe's parents also faced the threat of harassment by protestors outside of their house. *Id.* at ¶ 42. These events culminated with John Doe's summary expulsion from Friends Academy without any attempt to reach a mutually agreeable solution. *Id.* at ¶ 45.

### B. Factual Allegations Regarding Jane Doe.

Jane Doe is the younger sister of John Doe and attended the Friends Academy Lower School. (Am. Compl. ¶ 47). In November of 2019 Jane Doe's teacher Pamela Martocci noticed that Jane Doe was "W" sitting, referring to a position where an individual sits on their buttocks with each leg bent back, resembling the letter "W". *Id.* at ¶ 48. Despite having no background in medicine, Ms. Martocci took it upon

herself to tie Jane Doe's legs together to prevent her from sitting in the "W" position. *Id.* at ¶ 51, 53. Jane Doe began to cry and asked Ms. Martocci to "please not tie my legs together again". *Id.* at ¶ 52. Jane Doe was summarily expelled from Friends Academy after her parents filed a lawsuit against friends based on their actions against John Doe. *Id.* at ¶ 59.

## **ARGUMENT**

Plaintiffs respectfully request that the Court Deny Defendants' motion to dismiss for the reasons set forth below.

### **A. Standard for Dismissal.**

When addressing a motion to dismiss a complaint under Rule 12(b), the Court must "accept the complaint's factual allegations, and all reasonable inferences that can be drawn from those allegations in the plaintiff's favor, as true." *Roth v. Jennings*, 489 F.3d 499,501 (2d Cir. 2007). The notice pleading standard of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the. . claim is and the ground upon which

it rests." *Bell Atl. Corp. v. Twombly*. 550 U.S. 544, 555 (2007) (quoting

Fed. R. Civ. P 8(a)). In fact, "the pleading of additional evidence, beyond

what is required to enable the defendant to respond, is not only

unnecessary, but in contravention of proper pleading procedure." *Roth*,

489 F.3d at 512 (internal quotations and alteration omitted). At this

stage, "a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.' A claim has

facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 US 662,663 (2009)

(quoting *Twombly*, 550 U.S. at 556).

## B. Plaintiffs Have Adequately Pled a Violation of Title III of the ADA and Section 504 of the Rehabilitation Act.

Plaintiffs wish to make clear that with respect to their claims

under Title III of the ADA, Friends Academy is the central party in

interest, against which Plaintiff's claims are principally directed.

However, the liability of entities under Title III can be measured by the

actions of its employees or agents insofar as they are implementing the

policies and practices of the entity. *Andersen v. N. Shore Long Island*

*Jewish Healthcare System's Zucker Hillside Hosp.*, No. 12- CV-1049

(JFB)(ETB), 2013 U.S. Dist. LEXIS 29972 (E.D.N.Y. Jan. 23, 2013)

Thus, insofar as the actions of Defendant Herceg are pled in the context

of Plaintiff's Title III claims, they are pled for the purpose of evaluating

Defendant Friends' liability under Title III. [1]

   With respect to the issue of federal funding, it must be noted that

this is an open issue of fact at this point in the present proceedings.

While Andrea Kelly's affidavit states that Friends Academy does not

receive federal funding, it must be stressed that this contention is self-

serving in nature and does not foreclose that evidentiary material might

be raised during discovery that could dispute Defendants' contentions.

(Volpe declaration pg. 124). *Thrane v. Metro. Transp. Auth.*, No. 15-cv-

07418(FB)(LB), 2018 U.S. Dist. LEXIS 22700, (E.D.N.Y. Feb. 12, 2018)

(Holding that a factual dispute is not appropriate to resolve at a motion

to dismiss stage); *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir.

2000) (holding "a district court errs when it 'consider[s] affidavits and

exhibits submitted by' defendants, or relies on factual allegations

---

[1] With respect to available injunctive relief pertaining to Defendant Herceg's actions, Plaintiff might be able to obtain an apology, or have his disciplinary record cleared by Friends Academy.

contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (quoting *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991)). For this reason, Plaintiffs' claim under Section 504 should not be dismissed for lack of federal funding.

Furthermore, contrary to Defendants' assertions, Plaintiffs' accommodation requests were not unreasonable. (Defendant's Motion to Dismiss, pg. 10-12). With respect to the September 2020 incident, it is not Plaintiff's position that John Doe should have been free from any and all consequences. Instead, John Doe's disability accommodation obligated Friends Academy merely to take his disability into account when responding to his actions. (Am. Compl. ¶ 73). Friends Academy was on notice that John Doe suffered from numerous mental health conditions which rendered him prone to making ill-advised, and often, inappropriate outbursts. *Id.* at ¶ 26-28. The September 2020 incident was a manifestation of this behavior and therefore a manifestation of John Doe's Disability. *Id.* at ¶ 72.

At bottom, John Doe's accommodation simply required Friends Academy to work constructively with him in order to learn from his mistake. *Id.* at ¶ 73. This cannot be considered "unreasonable" because

it merely required Friends Academy to consider any of the myriad disciplinary measures available to them that did not unnecessarily punish John Doe for manifestations of his disability. (Volpe Declaration pg. 103). This in no way would have required Friends Academy to "excuse" or "tolerate" John Doe's behavior in a manner that would have undermined student behavioral standards. By opting to summarily expel John Doe in response to the September 2020 incident, Friends Academy took the most drastic and punitive action available to them, and in doing so, completely failed to account for John Doe's disability. *Id.*

The cases cited by Defendant are clearly distinguishable from the facts of the present case. To begin with, these cases all involve adult Plaintiffs, whereas John Doe is a minor. Furthermore, the September 2020 incident was not part of a part a pattern of racist or bigoted behavior by John Doe but was a one-time incident. Unlike John Doe, the Plaintiffs in the cited cases had engaged in repeated and dangerous actions, often over the course of years. *Krasner v. City of N.Y.*, 580 F. App'x 1 (2d Cir. 2014); *Krasner v. City of N.Y.*, 2013 U.S. Dist. LEXIS 136534 (S.D.N.Y. Sep. 23, 2013) (Plaintiff had been reprimanded

multiple times for threatening violence over the course of 10 years); *McElwee v. Cty. of Orange*, 700 F.3d 635 (2d Cir. 2012) (Plaintiff had acted in a sexually aggressive manner towards multiple people over the course of 10 years); *Szuszkiewicz v. JPMorgan Chase Bank*, 257 F. Supp. 3d 319 (E.D.N.Y. 2017) (Plaintiff had stalked a business associate leading to his arrest and conviction).

John Doe's disabilities cause him high levels of anxiety and self-consciousness when he is the subject of unwanted attention.  (Am. Compl. ¶ 25).  For this reason, Plaintiffs requested-and were granted-an accommodation from Friends Academy that obligated teachers to refrain from calling attention to John Doe when possible. *Id.* at ¶ 27. However, Defendants have misconstrued this accommodation as a request to "never call on, publicly speak to or address, or actively engage with John Doe in any way during his time as a student in the classroom". (Defendant's Motion to Dismiss, pg. 12).  This is a false characterization of John Doe's accommodation.

With respect to John Doe's general accommodation, the Amended Complaint states "In November of 2019, JOHN DOE's teachers were made aware of JOHN DOE's GAD, OCD, and ADHD. Specifically, they

were asked not to highlight or call attention to JOHN DOE so as not to trigger JOHN DOE's GAD, OCD, and ADHD. The teachers agreed to conform to these accommodations." (Am. Compl. ¶ 69). This paragraph makes clear that the accommodation was limited in scope to the contours of John Doe's disability. It is not that the teachers were to *never* call on John Doe, but only that the teachers should not call on him in a manner that would trigger his disabilities. Indeed, it is unclear why Plaintiffs would request John Doe's teachers to completely ignore him, because such a request would essentially deprive John Doe of any educational benefits from attending Friends Academy.

### C. Plaintiffs' Breach of Contract Claims are not Barred by Article 78.

Plaintiffs' breach of contract claims did not need to be brought pursuant to Article 78. N.Y. C.P.L.R. § 7801. When considering whether state law claims need to be brought under Article 78 Courts have stated "[t]he nature of the relief sought is key to determining whether Article 78 applies." *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 404 (W.D.N.Y. 2017). In the context of an educational institution, a proceeding under Article 78 is appropriate

only when a Plaintiff seeks injunctive relief to challenge or reverse an administrative decision made by the school. *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199 (S.D.N.Y. 1998) New York Courts have made clear however, that when a Plaintiff seeks monetary damages in a breach of contract action, Article 78 is not implicated. *Pell v. Trustees of Columbia Univ.*, 1998 U.S. Dist. LEXIS 407, No. 97 Civ. 0193, 1998 WL 19989, at *20 (S.D.N.Y. Jan. 21, 1998) (rejecting argument that student's suit against school for breach of contract had to brought in Article 78 proceeding); *id.* (Noting that Article 78 proceedings generally "are not the proper vehicle for enforcement of private contractual rights"). When Plaintiff's Complaint requests both injunctive relief and monetary damages, state law claims need not be brought under Article 78. *Rolph* 271 F. Supp. 3d at 405 (State law claims sought money damages while injunctive relief was available under Federal Title IX cause of action.).

Plaintiff's amended complaint in the present case is most analogous to the to the complaint in *Rolph*, that is, it requests both monetary damages and injunctive relief. *Id.* While Plaintiff pursues injunctive relief through their Title III claim, Plaintiff's state law

claims, including the breach of contract claims only seek monetary damages.  (Volpe Declaration pg. 44)  Plaintiff does not seek  "to compel nor to prohibit any action by defendants" specifically through their breach of contract cause of action.  *Gally,* 22 F. Supp. 2d at 205.  Thus, Article 78 does not apply to Plaintiffs' breach of contract claims, and they are not time barred.

### D. Plaintiffs Have Adequately Pled their Third and Tenth Causes of Action for Breach of Contract.

Defendants argue that Plaintiffs have failed to adequately allege a Breach of Contract claim.  The heart of their contention is that the Friends Academy student handbook gave the Defendants flexibility in their approach towards discipline and that Plaintiffs have failed to account for this.  (Defendant's Motion to Dismiss, pg. 25-28 *Supra*). However, despite this language, Defendants have violated the spirit of their agreement with Plaintiffs.

It is well established that each contract contains an implied covenant of good faith and fair dealing. *Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.,* 949 N.Y.S.2d 115 (App. Div. 2012).  This covenant obligates the parties of a contract to ensure that that their actions do not deprive

the other party of the essential fruit of the contact, even when the terms

of the contract do not explicitly prohibit such conduct. *New York Univ.*

*v. Continental Ins. Co.*, 87 N.Y.2d 308 (1995); *Dalton v. Educational*

*Testing Serv.*, 87 N.Y.2d 384 (1995); *Murphy v. American Home Prods.*

*Corp.*, 58 N.Y.2d 293 (1983); *Outback/Empire I, Ltd. Partnership v.*

*Kamitis, Inc.*, 35 A.D.3d 563, (2d Dep't 2006).  Under New York Law, a

"breach of [the implied covenant of good faith and fair dealing] is merely

a breach of the underlying contract." *Commerce & Indus. Ins. Co. v.*

*United States Bank Nat'l Ass'n*, 2008 U.S. Dist. LEXIS 67768, at *8

(S.D.N.Y. Aug. 29, 2008); *Sea Carriers Corp. v. Empire Programs, Inc.*,

488 F. Supp. 2d 375 (S.D.N.Y. 2007) (quoting *Fasolino Foods Co., Inc. v.*

*Banca Nazionale del Lavoro*, 961 F.2d 1052 (2d Cir. 1992) (internal

quotation marks and citation omitted).  Therefore, a claim for a

violation of the implied covenant of good faith and fair dealing need not

be brought separate from a breach of contract claim.  *New York Univ. v.*

*Continental Ins. Co.*, 87 N.Y.2d at 320.

In the instant case, the Friends Handbook (hereinafter

"Handbook") makes clear that outright expulsion of a student is

intended to be an exceptional measure, undertaken in most egregious

circumstances.  At the outset the Handbook states that " A student's age, overall record, truthfulness, and general attitude will affect the school's response to any disciplinary situation." (Volpe declaration pg. 67-68).  With respect to the Upper School's disciplinary guidelines, the Handbook emphasizes disciplinary measures-even in the case of "major offenses", that feature communication and collaboration between students, parents, and faculty members *Id.* at pg. 102-103.  Taken together, these provisions give an unmistakable impression that expulsion is not meant to be an automatic response to a student infraction, but one undertaken when other measures have failed or are unlikely to succeed.

In the instant case, John Doe's infraction was not part of a long track record of misbehavior but was simply a onetime occurrence. Furthermore, the School was aware of John Doe's disabilities, and was therefore in a position to consider how his disabilities might have contributed to his behavior.  Based on the language in the handbook, Plaintiffs had a reasonable expectation that Friends Academy would consider these facts when addressing John Doe's behavior.  However, Friends Academy did not do so, instead they opted to summarily expel

John Doe, thereby depriving him and his parents of an essential fruit of their contract with Friends Academy; namely that John Doe would be subject to a disciplinary response proportional to his disciplinary record and disability.

With respect to Plaintiff's breach of contract claim that pertains to Jane Doe, Defendants note that Friends Academy has discretion to discontinue a student's enrollment when "[A] positive, collaborative and constructive relationship between the School and Parents" is no longer possible. (Volpe declaration pg. 120).  However, it must be stressed that it was the actions of the Defendant, not Jane Doe's parents that created the conditions making an amicable relationship between Plaintiffs and Friends Academy untenable.  By failing to accommodate John Doe's disability and allowing him to be subjected to bullying, Defendants destroyed the relationship with John Doe and Jane Doe's parents. Therefore, Jane Doe's dismissal constituted a breach of contract.

### E. Plaintiffs Have Adequately Pled their Fifth Cause of Action for Negligence with Respect to John Doe.

With respect to John Doe, Plaintiff's negligence claim is partially based on the Defendants' failure to adequately respond to the daily

bullying that John Doe was experiencing while enrolled at Friends Academy. (Am. Compl. ¶ 112-115). Defendants argue that Plaintiffs have failed to adequately allege that the harm suffered by John Doe due to the bullying was sufficiently foreseeable to the staff at Friends Academy. (Defendant's Motion to Dismiss, pg. 20-22). Defendants also argue that the harm suffered by John Doe was not proximately caused by the negligence of the Defendants. *Id.* However, the Amended Complaint makes abundantly clear that the bullying suffered by John Doe was foreseeable to Friends Staff and that John Doe's harm was proximately caused by Defendants' negligence. (Am. Compl. ¶ 112-115).

New York law imposes a duty on teachers to supervise students in manner similar to what a "parent of ordinary prudence would observe in comparable circumstances." *Hoose v. Drumm*, 281 N.Y. 54, 58 (1939). With respect to injuries caused by fellow students, a breach of this duty is shown when injuries were reasonably foreseeable. *Brandy B. v. Eden Cent. Sch. Dist.*, 15 N.Y.3d 297 (2010); *Mirand v. City of N.Y.*, 84 N.Y.2d 44 (1994). Actual knowledge of a specific injury is not required to demonstrate foreseeability with respect to that injury, and Schools may be held liable when the injuries were a reasonably foreseeable

consequence of their own inaction. *Doe v. Fulton Sch. Dist.*, 826

N.Y.S.2d 543 (4th Dep't 2006).

The Amended Complaint makes clear that John Doe suffered from

bullying on a daily basis, and that the bullying took a severe toll on

John Doe's mental well-being. (Am. Compl. ¶ 30-32). Furthermore, the

disruptions to John Doe's mental health were severe enough to merit

alterations of his medication. *Id.* at 34-35. Given the frequency of the

bullying and severity of these consequences, the staff at Friends

Academy reasonably should have been in a position to intervene and

stop it. Accordingly, because the harm to John Doe from the bullying

was foreseeable, and the Defendants could have, but did not stop it that

harm was therefore proximately caused by the negligence of the

Defendants. *Turturro v. City of N.Y.*, 28 N.Y.3d 469 (2016).

Defendants also argue that the portions of Plaintiffs' negligence

claims premised on the Defendants' failure to provide John Doe with

disability accommodations must fail because the accommodations were

unreasonable. As was outlined above, the accommodations were not

unreasonable and Defendants' argument must therefore fail. (See

section B *supra*).

## F. Plaintiffs Have Adequately Pled their Seventh Cause of Action for Negligence with Respect to Jane Doe.

As a preliminary matter it must be noted that Defendants have misconstrued Plaintiff's negligence claim pertaining Jane Doe by characterizing it as a failure to supervise claim, when it is in fact based on Respondeat Superior. *Talavera v. Arbit*, 18 A.D.3d 738 (2d Dep't. 2005); (Defendant's Motion to Dismiss, pg. 24); (Am. Compl. ¶ 60-62). Defendants argue that Plaintiff's negligence claim pertaining to Jane Doe must fail because Plaintiff has not adequately pled foreseeability on the part of Friends Academy. However, both parties agree that Defendant Martocci did in fact tie Jane Doe's legs together and that this action was not something Defendant Martocci was permitted to do in the course of her job duties. *Id.* It can be reasonably inferred that Friends Academy failed to properly train Defendant Martocci so as to ensure she understood that tying a student's legs together was wrongful. As is made clear in the Amended Complaint, it was thus foreseeable to Friends Academy that an improperly trained employee would go on to commit harm similar to that done by Defendant Martocci. *Bowman v. State*, 10 A.D.3d 315 (1st Dep't. 2004); (Am.

Compl. ¶ 140).  Plaintiffs have therefore adequately pled foreseeability with respect to their negligence claim pertaining to Jane Doe.

## G. Plaintiffs Have Adequately Pled their Sixth and Eighth Causes of Action for Negligent Infliction of Emotional Distress.

Defendant's objection to Plaintiff's was premised on their arguments targeting Plaintiff's negligence claims broadly.  Because Plaintiff has adequately pled their negligence claims, these objections must fail.  Furthermore, Plaintiffs' NIED claims are not duplicative of their negligence claim because they are not premised on the same conduct.  *Caravalho v. City of N.Y.*, No. 13-cv-4174 (PKC)(MHD), 2016 U.S. Dist. LEXIS 44280 (S.D.N.Y. Mar. 31, 2016).  The NIED claims encompass the dismissal of John Doe and Jane Doe while their negligence claims do not. (Am. Compl. ¶ 120, 145).  Because the NIED and negligence claims are not premised on the same conduct, they are not duplicative.  *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 327-328 (E.D.N.Y. 2016).

## H. Plaintiffs Have Adequately Pled their Ninth Cause of Action for Assault and Battery.

As a preliminary matter, Defendant Martocci's actions towards Jane Doe constitute a civil battery by virtue of the fact that, by tying Jane Doe's legs together, she intentionally made physical contact with Jane Doe and the contact was unwanted by Jane Doe. (Am. Compl. ¶ 148-150); *Tower Ins. Co. v. Old N. Blvd. Rest. Corp.*, 245 A.D.2d 241, 242 (1st Dep't. 1997) ("To establish a civil battery a plaintiff need only prove intentional physical contact by defendant without plaintiff's consent; the injury may be unintended, accidental or unforeseen."); *Villanueva v. Comparetto*, 180 A.D.2d 627, 629 (2nd Dep't. 1992) ("[A] plaintiff seeking to establish a civil battery need only prove that the defendant intentionally touched his person without his or her consent."). Moreover, the Defendants seemingly do not contest that Defendant Martocci's actions towards Jane Doe constitute a civil battery. (Defendant's Motion to Dismiss, pg. 26-27) However, Defendants argue that Plaintiffs have failed to allege the requisite level of intent to sustain their claim for assault because Defendant Martocci had benevolent intentions in actions towards Jane Doe. *Id.*

New York Courts have framed civil assault as conduct which "involves putting a person in fear of a battery". *Rivera v. State of N.Y.*, 34 N.Y.3d 383, 389 (2019); *Jeffreys v. Griffin*, 1 N.Y.3d 34, 41 n 2 (2003). It therefore follows that where a battery has been committed, any actions by a perpetrator which intentionally placed the victim in apprehension or fear of that battery should constitute an assault. *Id.* In the present case, the actions undertaken by Defendant Martocci in preparing to tie Jane Doe's legs together were clearly intentional, as preparing to tie legs together cannot plausibly be construed as accidental. (Am. Compl. ¶ 149). Furthermore, these actions put Jane Doe in immediate fear or apprehension of a battery (the tying of her legs). *Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006). Therefore, Defendant Martocci's actions constitute a civil assault.[2] *Id.*

## I. Plaintiffs Have Adequately Pled their Eleventh Cause of Action for Unfair and Deceptive Trade Practices.

Defendants raise several challenges to Plaintiff's GBL § 349 claim. N.Y. Gen. Bus. Law § 349.  First, Defendants argue that

---

[2] As was outlined in Section F, the harm caused by Defendant Martocci's actions was foreseeable to Friends Academy.

representations contained within the Friends Handbook cannot form
the basis of a GBL § 349 claim because it is primarily aimed at already
enrolled families and is therefore not "consumer oriented". (Defendant's
Motion to Dismiss, pg. 29).  However, even if the handbook is primarily
oriented towards already enrolled families, it is common practice for
schools give include their handbooks in materials provided to
prospective enrollees for promotional purposes.  *Himmelstein,
McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender &
Co.,* 37 N.Y.3d 169 (2021), (Printed material likely to be consumed by
the general public is "consumer oriented" for purposes of GBL § 349).
At any rate, this argument is moot because Plaintiff's GBL § 349 is also
premised explicitly on Friends Academy's "advertising material", which
Defendants do not contest is "consumer oriented".  (Am. Compl. ¶ 169);
(Defendant's Motion to Dismiss, pg. 29).

Defendants next assert that Plaintiff has failed to plead their GBL
§ 349 claim with the requisite amount of specificity and that the
representations made by Friends Academy were not "materially
misleading.  (Defendant's Motion to Dismiss, pg. 29-30).  With respect
to the specificity of alleged misleading statements, New York Courts

have held that when a Plaintiff fails to specify *any* misleading content or statements with respect to a GBL § 349 claim, the claim must fail for lack of specificity.  *Woods v. Maytag Co*., No. 10-CV-0559 (ADS)(WDW), 2010 U.S. Dist. LEXIS 116595 (E.D.N.Y. Nov. 2, 2010) (Allegedly misleading statements were pled on "information and belief").  The focus of the inquiry as to allegedly misleading statements is not *where* specifically the statements came from, but rather, it is whether or not a reasonable consumer would have been misled by the statements. *Horowitz v. Stryker Corp*., 613 F. Supp. 2d 271 (E.D.N.Y. 2009) (Plaintiff nakedly asserted that Defendant's assertions were "misleading" without any attempt to specify the nature of the assertions).  Here Plaintiff has alleged that prior to John Doe and Jane Doe's enrollment, Friends Academy portrayed itself as a leaning institution that was accommodating of students with learning differences and that those portrayals were later shown to be inaccurate. (Am. Compl. ¶ 23, 24, 169).  Because a reasonable consumer could be misled by these representations, Plaintiffs have pled their GBL § 349 claim with the requisite amount of specificity.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, *N.A.*, 85 N.Y.2d 20 (1995).

Finally, Defendants argue that Plaintiffs have failed to demonstrate that Defendants' deceptive acts and statements caused injury to Plaintiffs.  (Defendant's Motion to Dismiss, pg. 30).  Contrary to Defendants' assertions, the Amended Complaint makes clear that Friends Academy misleadingly represented itself to John Doe's parents as a learning institution that was accommodating of students with learning differences, and that upon enrolling John Doe at Friends, the staff at Friends Academy completely failed to live up to these representations.  (Am. Compl. ¶ 23, 24, 169).   Therefore, it was the misleading representations of Friends Academy that caused John Doe to be put in a position to experience the harm that he suffered while enrolled at Friends Academy.  *Id.*  Plaintiffs have therefore adequately pled the causation element of their GBL § 349 claim.

## J. Plaintiff Should be Granted Leave to Amend their Complaint Should This Court Grant Defendants' Motion to Dismiss.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint shall be freely given when justice so requires. USCS Fed Rules Civ Proc R 15 (a).  Courts generally decline to allow amendment only in cases in which amendment would be futile or where amendment

would unduly prejudice the defendants.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007); *Mendoza v. Lainesita Rest. Corp.*, No. 12 CV 4188 (DRH)(ARL), 2014 U.S. Dist. LEXIS 101769 (E.D.N.Y. July 25, 2014).  Here, Defendants do not argue that further amendment would prejudice them, and  Contrary to Defendant's assertions, Plaintiffs' Rehabilitation Act claims do not fail as a matter of law and can survive a motion to dismiss (See Section B *supra*).   Furthermore, the fact that Plaintiff has previously amended their complaint is not dispositive as to whether further amendment is appropriate, particularly in cases such as this, where they are many open issues of fact. *Kennedy v. Bethpage Union Free Sch. Dist.*, No. 20-CV-72 (PKC) (ARL), 2021 U.S. Dist. LEXIS 188884 (E.D.N.Y. Sep. 30, 2021). Defendants have therefore failed to demonstrate that amendment would be futile in this case.  For this reason, Plaintiffs request that in the event this Court grant any part of Defendant's Motion to Dismiss, this Court grant Plaintiff leave to move to amend their complaint. *Foman v. Davis*, 371 U.S. 178 (1962).

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that

this Court deny Defendants' Motion to Dismiss.

Dated: March 18, 2022      Keith Altman, Esq.
                              By: <u>*/s/ Keith Altman*</u>
                              The Law Office of Keith Altman
                              33228 West 12 Mile Road, Suite 375
                              Farmington Hills, Michigan 48334
                              Telephone: (248) 987-8929
                              keithaltman@kaltmanlaw.com